## PEOPLE v BLACKBURNE

Docket No. 84003. Submitted December 4, 1985, at Grand Rapids.—
Decided January 10, 1986. Leave to appeal denied, 425 Mich
869.

Robert Jay Blackburne pled guilty in Berrien Circuit Court to
charges of possession of less than 50 grams of cocaine and
carrying a concealed weapon and was sentenced, Zoe S. Burk-
holz, J. Defendant appealed, claiming that the trial court erred
in not suppressing evidence presented against him at the
preliminary examination. *Held:*

1. The initial stop of the vehicle in which defendant was
riding was reasonable and legal.

2. The police officers who stopped the vehicle had specific,
articulable grounds for conducting pat-down searches on the
occupants of the vehicle. The searches were reasonable and
legal.

3. The seizure of the cocaine found on the two passengers in
the backseat of the vehicle was reasonable and legal.

4. The trial court did not clearly err in denying defendant's
motion to suppress the evidence. The search and seizure in this
case was not unreasonable or illegal.

Affirmed.

1. CRIMINAL LAW — SUPPRESSION OF EVIDENCE — APPEAL.

A trial court's ruling at a suppression hearing will not be dis-
turbed unless that ruling is found to be clearly erroneous.

2. SEARCHES AND SEIZURES — PAT-DOWN SEARCHES.

A police officer, in conducting a pat-down search, must have
reasonably concluded that the persons with whom he is dealing
may be armed and dangerous based on specific, articulable,
reasonable inferences drawn from the facts.

REFERENCES

Am Jur 2d, Appeal and Error § 166.

Am Jur 2d, Searches and Seizures §§ 33, 58, 59, 84 *et seq.*

Comment note on "fruit of the poisonous tree" doctrine excluding
evidence derived from information gained in illegal search. 43
ALR3d 385.

Violation of federal constitutional rule (Mat v Ohio) excluding
evidence obtained through unreasonable search or seizure, as
constituting reversible or harmless error. 30 ALR3d 128.

3. SEARCHES AND SEIZURES — PLAIN VIEW DOCTRINE.

Police officers may seize evidence or contraband they observe following a justifiable intrusion into an area in which a person has a reasonable expectation of privacy if the conditions of the plain view doctrine are met; the plain view doctrine requires: (1) prior justification for instrusion into the otherwise protected area; (2) the evidence is obviously incriminatory or contraband; and (3) the discovery of the evidence is inadvertent.

4. SEARCHES AND SEIZURES — PLAIN VIEW DOCTRINE — PROBABLE CAUSE.

Police officers need only have probable cause to believe that the object within their plain view is evidence or an implement of a crime to satisfy a condition of the plain view doctrine, pertaining to the seizure of property without a warrant, which requires that the property be obviously incriminating evidence or contraband.

5. SEARCHES AND SEIZURES — PLAIN VIEW DOCTRINE — EVIDENCE — INADVERTENT DISCOVERY OF EVIDENCE.

Discovery of evidence is inadvertent for purposes of the plain view doctrine so long as the police lacked probable cause to believe that the evidence would be found.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Paul L. Maloney,* Prosecuting Attorney, and *Brian S. Berger,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Chari K. Grove),* for defendant on appeal.

Before: BEASLEY, P.J., and R. M. MAHER and R. L. TAHVONEN,* JJ.

PER CURIAM. On August 13, 1984, defendant, Robert Jay Blackburne, pled guilty to possession of cocaine, less than 50 grams, in violation of MCL 333.7403(1) and (2)(a)(iv); MSA 14.15(7403)(1) and (2)(a)(iv), and to carrying a concealed weapon, in violation of MCL 750.227; MSA 28.424. On October 8, 1984, defendant was sentenced to concurrent

---

* Circuit judge, sitting on the Court of Appeals by assignment.

prison terms of not less than two years nor more than four years for possession of cocaine and not less than two years nor more than five years for carrying a concealed weapon. Defendant appeals from these convictions as of right.

On appeal, defendant claims that the district court erred in not suppressing evidence presented against him at the preliminary examination held on January 10, 1984. After hearing arguments and receiving written briefs from both parties addressing defendant's motion to suppress the evidence, the district court found that the search and seizure which produced the evidence against defendant was not unreasonable or illegal. The circuit court also denied defendant's motion to suppress the evidence in an order dated July 10, 1984.

At the outset, we decide whether defendant can raise this issue on appeal after pleading guilty to the charges against him. Presently, there is a split on this issue in recent decisions of this Court and in dicta included in recent decisions of the Michigan Supreme Court. In *People v Eubank,*[1] this Court held that on appeal a defendant cannot raise the issue of an illegal search and seizure after his plea of guilty has been accepted in the trial court.

However, in *People v Alvin Johnson,*[2] a 1976 case which allowed a defendant to raise a claim of double jeopardy after pleading guilty, the Michigan Supreme Court stated:

"Certainly it is true that those rights which might provide a complete defense to a criminal prosecution, those which undercut the state's interest in punishing

---

[1] 121 Mich App 227, 230; 328 NW2d 408 (1982), which lists other decisions of this Court on this issue; *People v Wilkens,* 139 Mich App 778, 787; 362 NW2d 862 (1984).

[2] 396 Mich 424, 444; 240 NW2d 729 (1976), *cert den* 429 US 951 (1976).

the defendant, or the state's authority or ability to proceed with the trial may never be waived by guilty plea. These rights are similar to the jurisdictional defenses in that their effect is that there should have been no trial at all. The test, although grounded in the constitution, is therefore a practical one. Thus, the defense of double jeopardy, those grounded in the due process clause, those relating to insufficient evidence to bind over at preliminary examination and *failure to suppress illegally-obtained evidence without which the people could not proceed* are other examples. Wherever it is found that the result of the right asserted would be to prevent the trial from taking place, we follow the lead of the United States Supreme Court and hold a guilty plea does not waive that right." (Footnotes omitted, emphasis added.)

In *People v Reid,*[3] the Supreme Court recently, in 1984, repeated the above-quoted dicta. In *Reid,* the Court allowed a defendant to raise the issue of an illegal search and seizure after he entered a conditional guilty plea where all the parties agreed that the defendant could raise the issue on appeal.

The Supreme Court squarely addressed the unconditional guilty plea situation presented in this case only in a concurring opinion written by Justice MOODY in *People v White.*[4] In that opinion, Justice MOODY said that the decisions in this Court, not allowing defendants to raise the search and seizure issue after entering a plea of guilty, were correct. Justice MOODY reasoned that the entry of a guilty plea did away with the need for any separate evidentiary, factual basis to convict defendant. Since the suppression of evidence in this situation would have no effect, the defendant should not be permitted to raise the illegal search and seizure issue after pleading guilty. There

---

[3] 420 Mich 326; 362 NW2d 655 (1984).

[4] 411 Mich 366, 391; 308 NW2d 128 (1981).

should not be any retroactive finding of a lack of jurisdiction based on lack of admissible evidence once a guilty plea has been accepted.

We believe that Justice Moody's position is the sound, preferable, logical view and that our prior decisions in this Court to that effect are correct. However, the dicta in recent majority opinions of the Michigan Supreme Court seem to indicate that a defendant can raise this issue on appeal even after pleading guilty. In addition, now that conditional guilty pleas are clearly allowed by *Reid, supra,* this situation involving an unconditional guilty plea is unlikely to occur in the future. And finally, the prosecutor concedes this issue in this case. Against this background, we consider the merits of defendant's claim of an illegal search and seizure.

In the within case, the record reveals that on December 29, 1983, defendant was a passenger in a car with three other men. The car broke down on I-94 as the four men were travelling from Detroit to Chicago. The four men walked to a gasoline station and called a tow truck to tow their car to another gas station that was able to make repairs. When the tow truck arrived, the driver refused to transport all four men in the vehicle being towed. Two of the men then had to call a cab to get to the garage where the car would be repaired. Upon driving these two men to the garage, the cab driver overheard a conversation between them. He noted that one of the men was reluctant to enter the cab. The other man said: "It's all right, the car is going to be okay and *don't worry about the shit, it's going to be okay.*" (Emphasis added.)

After dropping the two men off at the garage, the cab driver contacted a police detective to whom he had given information in the past. The

cab driver told the detective about the conversation and that one of the men was a large Cuban who spoke mostly in Spanish and was constantly moving around and acting peculiar. The cab driver also said that he had seen a two-inch thick wad of money, with $100 bills on the outside, in the possession of the Cuban. The cab driver also reported that the broken-down car in which they had been riding had Florida license plates.

Upon receiving this information, the detective relayed it to another detective on the narcotics squad. Based on this information and his two and one-half years of experience as a narcotics officer, the narcotics detective decided to investigate.

The narcotics detective articulated his basis for suspecting that the four men were transporting drugs as follows: the reference of one of the men to "shit" which, in street drug parlance, means any controlled substance; the route defendants were travelling (I-94) was commonly known as a major drug route between Detroit and Chicago where numerous drug arrests had previously occurred; the vehicle driven by the four men had Florida license plates (Florida is a common place of import for drugs destined for Detroit and Chicago); the reluctance of the Cuban man to leave the car; and the observation of a large wad of money.

The detective arranged for assistance from two state police troopers. He briefed the uniformed troopers on the situation and directed them to watch the garage from their patrol car. The detective then went to the garage where the four men were waiting for their car to be repaired. At the garage, the narcotics detective observed the four men and their automobile. One of the four men stepped between him and the car as he tried to get near the car, but he was able to see a knife on the floor of the car. The detective then left the garage.

The repairs on the car were finished and the four men drove out of the garage. While driving out of the garage, the car remained on the wrong side of the center line for a distance of about ⅛th of a mile and then pulled into another gas station. The state troopers and the narcotics detective followed in separate cars, pulled into the gas station, got out of their cars and approached the vehicle with the four men. One trooper asked the driver to get out of the car. As the driver got out of the car, the trooper observed a knife on the floor of the car. He then told the other trooper about the knife. The other trooper also noted that one of the men was sitting on his hands and might have a weapon. The two men on the passenger side got out of the car, and the trooper asked the remaining passenger to also get out.

When all four men were out of the car, one trooper patted down the driver for weapons and noted no hard objects. The other trooper patted down the front seat passenger, defendant herein, finding a handgun in defendant's belt. The trooper then patted down one of the backseat passengers and felt two hard objects in his pockets. The trooper opened the passenger's pockets and observed a large amount of money wrapped in rubber bands in one pocket and a brown paper bag folded up with rubber bands around it in the other pocket. The trooper left the items in the passenger's pockets and called the narcotics detective over to look at the items in the pockets. Based on his police narcotics experience, the detective said he believed the paper bag contained controlled substances. The trooper then seized the paper bag. The other trooper then found exactly the same items on the other rear seat passenger and also seized that paper bag. The narcotics detective opened one of the paper bags and found a white,

powdery substance which was later revealed to be cocaine. Defendant was then arrested and charged based on the gun found on him and the cocaine found on the other passengers in the car.

We note first that a trial court's ruling at a suppression hearing will not be distrubed unless that ruling is found to be clearly erroneous.[5] In determining whether the trial court clearly erred in finding the search and seizure in this case to be reasonable, we will analyze each step in the search process that produced the evidence against defendant.

First, defendant argues that the trial court erred in finding that the initial "stop" of the four men in their car was not unreasonable. Since, at the time of the initial approach by the state troopers, defendant was not under arrest nor was there probable cause for an arrest, our determination of this issue looks to the "stop and frisk" rules enunciated in *Terry v Ohio*.[6] Under *Terry,* in making a valid stop, the police officer must have reasonably concluded that criminal activity may be afoot based on specific, articulable, reasonable inferences which he may draw from the facts based on his experience.[7]

In the within case, the state troopers possessed a reasonable suspicion of possible criminal activity at the time of the "stop" based on two specific, articulable grounds. First, the stop could be justified on the basis of a traffic violation, since the car had travelled on the wrong side of the road.[8] But, even if this first ground had been a mere pretext

---

[5] *People v Burrell,* 417 Mich 439, 448; 339 NW2d 403 (1983); *People v Alfafara,* 140 Mich App 551, 555-556; 364 NW2d 743 (1985).

[6] 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

[7] *People v Parham,* 147 Mich App 358; 382 NW2d 786 (1985); *People v Sizemore,* 132 Mich App 782; 348 NW2d 28 (1984).

[8] *Burrell, supra,* p 450.

for the stop (a finding which we do not make), the stop was also proper based on the facts noted in detail above. The police officers reasonably suspected that the four men in the car were engaged in drug shipment activity. It should also be noted that the police officers used the least intrusive means possible in approaching the four men. The car was not pulled over on the road or stopped in any way. The car pulled into the gasoline station without the troopers using their lights or otherwise motioning the car to stop. The "stop" in this case consisted merely of the troopers approaching the stopped car on foot in order to ask some questions. Therefore, we conclude that the initial, least intrusive, contact made by the state troopers with the four men in the car was reasonable and legal.

Defendant next asserts that the pat-down searches of himself and the three other men were unreasonable. Again, *Terry* supplies the standard applicable to this police action. The police officer, in conducting a pat-down search, must have reasonably concluded that the persons with whom he is dealing may be armed and dangerous based on specific, articulable, reasonable inferences drawn from the facts.[9]

The state troopers in this case initiated the pat-down searches on the driver and defendant after observing a knife on the floor of the car and seeing a backseat passenger sitting on his hands. The pat-down searches of the backseat passengers were conducted after a handgun was found on defendant. We find that the state troopers had specific, articulable grounds for conducting the pat-down searches.

In reaching this conclusion, we note that this case is directly analogous to that of *Pennsylvania*

---

[9] *Parham, supra.*

*v Mimms,*[10] where the Supreme Court held that, once a police officer had legitimately stopped a vehicle, he had the right, without more, to order the driver out of the car and that a bulge in the driver's jacket permitted the officer to reasonably suspect he was armed and dangerous. The police officer could reasonably conduct a pat-down search for weapons. The observation of the knife on the floor of the car, and the fact that one of the passengers was hiding his hands, certainly rises to the level of a bulge in a jacket and justifies a reasonable suspicion that the four men were armed and dangerous. The police officers' pat-down searches in the within case were reasonable and legal.

Defendant finally argues that the seizure of the two brown paper bags wrapped in rubber bands from the pockets of the backseat passengers was unreasonable. This final step in the search process in this case presents a situation where police justifiably intrude into an area where a person has a reasonable expectation of privacy and observe evidence or contraband. In such a situation, the police may seize the observed evidence or contraband without obtaining a warrant, provided the three conditions of the doctrine of "plain view" are met, as set out in *Coolidge v New Hampshire.*[11]

This Court has held that the plain view doctrine requires: (1) prior justification for instrusion into the otherwise protected area; (2) that the evidence is obviously incriminatory or contraband; and (3) that the discovery of the evidence is inadvertent.[12]

---

[10] 434 US 106; 98 S Ct 330; 54 L Ed 2d 331 (1977).

[11] 403 US 443, 465; 91 S Ct 2022; 29 L Ed 2d 564 (1971).

[12] *People v Myshock,* 116 Mich App 72, 75-76; 321 NW2d 849 (1982); *Alfafara, supra.* Some panels of this Court have required exigent circumstances as well. See *People v Raybon,* 125 Mich App 295, 301; 336 NW2d 782 (1983). In this case, as in *Alfafara, supra,* the car's mobility provided the exigent circumstances.

Pursuant to our discussion above, the police officers were justified in intruding into the protected area of the passengers' pockets. Upon conducting the pat-down searches on these passengers, the officers noted two hard objects which may have been weapons. Under such circumstances, the police officers had a right to look inside the pockets to see if the hard objects were in fact weapons.

In addition, the items found in the pockets (the rolled paper bags and wads of money with rubber bands wrapped around them) were obviously incriminatory or contraband for purposes of the plain view doctrine. This Court has clearly stated that to satisfy this element of the plain view doctrine, the officers need only have probable cause to believe that an object is evidence or an implement of a crime.[13] The narcotics detective, upon observing the items, reasonably concluded that the items contained drugs or were evidence of drug activity. This situation is directly analogous to that of *People v Ridgeway*,[14] where this Court, relying mainly on the officer's experience and knowledge that tinfoil packets often contain narcotics, found probable cause to exist. The narcotics detective in this case, based on his experience with drug packaging, had probable cause to believe that the items found on the passengers contained drugs and were evidence of a crime.

Furthermore, the discovery of the evidence was inadvertent for purposes of the plain view doctrine. In *People v Myshock*,[15] this Court adopted the view of the Federal Sixth Circuit Court of Appeals which states that a discovery is inadvertent so long as the officers lacked probable cause to

[13] *Alfafara, supra,* p 557.

[14] 74 Mich App 306; 253 NW2d 743 (1977), *lv den* 401 Mich 831 (1977).

[15] *Myshock, supra,* p 76.

believe that the evidence would be found. Under this theory, even if the police expect to find the evidence but did not know if it was present, the discovery was inadvertent.

We are persuaded by the *Myshock* reasoning for adoption of this standard. Applying this standard to the facts herein, we conclude that the police officers did not have probable cause to believe that the passengers were carrying drugs when they initiated the search. They did not know they possessed drugs, but only had an articulable suspicion of such a possibility. Therefore, the discovery of the evidence was inadvertent for purposes of the plain view doctrine.

Since we have concluded that all the elements required for the plain view doctrine existed in this case, the seizure of the items found on the two backseat passengers was reasonable and legal.

Based on our analysis of every step taken by the police officers in obtaining the evidence against defendant, we find that the trial court did not clearly err in denying defendant's motion to suppress the evidence. The search and seizure in this case was not unreasonable or illegal.

Affirmed.