PEOPLE v HARRIS

Docket No. 84684. Submitted August 3, 1987, at Detroit. Decided
     September 17, 1987.

     Kenneth K. Harris was arrested and charged in Detroit Record-
     er's Court with one count of carrying a concealed weapon.
     Defendant was arrested by police officers responding to a report
     that there was a man with a shotgun in front of 2586 Harding
     in the City of Detroit. Upon their arrival, the police officers saw
     three men standing in close proximity in front of a vacant field.
     The men started moving, at which point the officers ordered
     them to stop. One of the men was holding a shotgun, which he
     dropped in the field. Another one threw a shiny object into the
     field as he walked away. The third man, defendant, continued
     walking until one of the officers physically stopped him. He was
     then led back to the police car and frisked. A handgun was
     found in defendant's right jacket pocket. Following an eviden-
     tiary hearing, the court, Marvin R. Stempien, J., granted
     defendant's motion to suppress evidence of the weapon and
     quashed the information against defendant. In so ruling, the
     court attached great significance to the fact that the police
     officer did not observe defendant committing any crime prior to
     the time he was stopped and frisked. The people appealed.

     The Court of Appeals held:

     The relevant inquiry is not whether the police officer ob-
     served defendant committing a crime, but, rather, whether he
     reasonably believed that criminal activity was afoot. In order to
     decide whether the police officer reasonably believed that crimi-
     nal activity was afoot, it is necessary to remand the case for
     the judge to resolve the fact question of whether defendant was
     with the other two men at the time the police officers first
     approached them, as the police officers testified, or whether
     defendant was forty or fifty feet away from the men at the
     time, as defendant claims.

     Reversed and remanded.

REFERENCES

Am Jur 2d, Searches and Seizures § 33.

Law enforcement officer's authority, under Federal Constitution, to
     "stop and frisk" person—supreme court cases. 32 L Ed 2d 942.

SEARCHES AND SEIZURES — INVESTIGATORY STOPS — PAT-DOWN
    SEARCHES.
    A police officer may validly stop a person who is not under arrest
    and against whom there is no probable cause for arrest where
    the officer has reasonably concluded, on the basis of specific,
    articulable, reasonable inferences which he may draw from the
    facts based on his experience, that criminal activity may be
    afoot; once a valid initial stop has been made, the officer may
    then conduct a pat-down search of the individual if he reason-
    ably concludes that the person may be armed and dangerous.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Jeffrey Caminsky,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Kim Robert Fawcett*), for defendant on appeal.

Before: SHEPHERD, P.J., and HOOD and T. M. BURNS,* JJ.

PER CURIAM. Defendant was charged with one count of carrying a concealed weapon, MCL 750.227; MSA 28.424, and was bound over to Detroit Recorder's Court for trial following a preliminary examination. At the Recorder's Court, defendant filed a motion to suppress evidence of the handgun which had been seized from him. At the conclusion of an evidentiary hearing, Wayne Circuit Judge Marvin R. Stempien, sitting in Recorder's Court, granted defendant's motion. Thereafter, the information filed against defendant was quashed. The people now appeal as of right from the ruling of the Recorder's Court judge suppressing evidence of the handgun.

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

At the evidentiary hearing, Detroit Police Officer Fred Jorgensen testified that, at approximately 12:00 midnight, he and his partner, Terrence Wrona, were on routine patrol when they received a police radio dispatch of a "man with a shotgun in front of 2586 Harding" in the City of Detroit. As the officers were approaching the address with the headlights of their car off, Jorgensen observed three black males standing on the sidewalk in front of a vacant field, one of whom appeared to be holding a shotgun. As the officers pulled up, Officer Wrona turned on the headlights and a spotlight. The men began moving and both officers got out of the police car and requested that all three men stop. According to Jorgensen, the man holding the shotgun dropped it in the field. Meanwhile, one man threw a shiny object into the field as he walked south on the sidewalk. Lastly, the third man, identified as defendant, walked northward on the sidewalk. Defendant did not stop when Jorgensen ordered him to do so. Instead, he continued walking and was about fifty feet from the spot where he was first observed before Jorgensen stopped him by physically taking him by the arm. Jorgensen then led defendant back to the police car and frisked him. He found a handgun in defendant's right jacket pocket.

Officer Jorgensen testified that he initially stopped defendant in order to question him concerning the man who was holding the shotgun. He frisked defendant merely as a precautionary measure.

Officer Wrona also testified at the evidentiary hearing. His testimony was similar to Officer Jorgensen's testimony.

Defendant's testimony presented a different story. He lives at the residence that borders on the north side of the vacant lot. At approximately

midnight on the night he was arrested, he was getting out of his car when he noticed two persons, Roland Rawlins and Larry Harris (no relative), talking together approximately forty to fifty feet away on the sidewalk. Defendant was not talking with either of the two men. Defendant testified that when he saw the police car approaching, he was walking northward towards his home. He heard someone say "Hold it," "Stop," or "Come back" and he stopped by his gate. A police officer then grabbed him, led him back to the patrol car and frisked him.

In granting defendant's motion to suppress evidence of the handgun, the Recorder's Court judge noted that the officer had to go "fifty feet up the sidewalk to bring defendant back before he [the officer] made the intrusion [frisked defendant]" and that defendant had not committed any crime that would have justified the officer's stop. The judge concluded:

> [T]he officer, even by his own version, had to go fifty feet up the sidewalk to get this defendant and bring him back in order to conduct the pat down. That certainly does not indicate as a matter of fact that there was any imminent danger to the officer under *Terry v Ohio* that would cause him to have a necessity to pat this individual down.
>
> If he really felt he was in imminent danger, the pat down would have taken place where he seized the defendant.
>
> So it appears to me that the defendant was doing nothing that was unlawful that would cause the officer to stop and arrest this individual. He never was arrested for anything.
>
> Therefore, the court would find that the officer didn't have reasonable grounds to apprehend this defendant, therefore, I will grant the motion to suppress the evidence.

Appellate review of grants or denials of motions to suppress evidence is made on the clearly erroneous standard. *People v Burrell,* 417 Mich 439; 339 NW2d 403 (1983). A finding is clearly erroneous where, although there is evidence to support it, the reviewing court is firmly convinced that a mistake has been made. *People v United States Currency,* 148 Mich App 326; 383 NW2d 633 (1986).

Since defendant was not under arrest nor was there probable cause for an arrest at the time of the pat-down search, resolution of this case is governed by the "stop and frisk" rules of *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), and its progeny. *People v Blackburne,* 150 Mich App 156; 387 NW2d 850 (1986).

In *People v Blackburne, supra,* this Court summarized the *Terry* "stop and frisk" rules:

> Under *Terry,* in making a valid stop, the police officer must have reasonably concluded that criminal activity may be afoot based on specific, articulable, reasonable inferences which he may draw from the facts based on his experience.
>
> *  *  *
>
> The police officer, in conducting a pat-down search, must have reasonably concluded that the persons with whom he is dealing may be armed and dangerous based on specific, articulable, reasonable inference drawn from the facts. [150 Mich App at 163, 164.]

See also *People v Parham,* 147 Mich App 358, 360; 382 NW2d 786 (1985).

We conclude that, because the judge erred in applying the law in this case, the case must be remanded for further findings of fact.

As part of his holding, the trial judge attached great significance to the fact that the police did

not observe defendant committing any crime prior to the time he was stopped and frisked. However, the relevant inquiry is not whether the officer observed defendant committing a crime, but, rather, whether the officer reasonably believed that criminal activity was afoot. *Terry, supra; Blackburne, supra.* Indeed, the arresting officer in *Terry* did not observe the commission of any crime. Instead, his search of the defendant was upheld because the officer reasonably believed that a crime was going to occur.

In order to decide whether Officer Jorgensen reasonably believed that criminal activity was afoot, it is necessary for the judge to resolve the fact question of whether defendant was with the other two men at the time the police officers first approached them, as Officers Jorgensen and Wrona testified, or whether defendant was forty to fifty feet from the men at the time the officers approached, as defendant claims.

We attach little significance to the fact that the officer stopped defendant and led him back to the police car before actually frisking him. The trial judge stated that if the officer felt himself to be in imminent danger, he would have frisked defendant at the spot where he stopped him. We believe that even if the officer believed that defendant was armed and dangerous, he could have felt secure in escorting defendant back to the police car before frisking him, particularly since the officer had defendant by the arm, presumably had his service revolver drawn, and defendant was not resisting the officer.

The ruling of the Recorder's Court judge granting defendant's motion to suppress is reversed. The case is remanded for further findings of fact, consistent with this opinion.