PEOPLE v BROWN

Docket No. 64846. Submitted April 21, 1983, at Lansing.—Decided July 19, 1983. Leave to appeal applied for.

Stanley J. Brown was convicted of armed robbery, Oakland Circuit Court, Francis X. O'Brien, J. Defendant appeals, alleging that the trial court erred in failing to suppress evidence which was obtained as a result of the entry, without a search warrant, of police into defendant's home. *Held:*

1. The issue at the suppression hearing was whether the defendant had consented to the officers' entry into his home, thus obviating the requirement for a warrant. The standard of review of a trial court's decision at such a hearing is whether the decision was "clearly erroneous". In this case the question was primarily one of credibility. The Court of Appeals is not left with a definite and firm conviction that a mistake was made.

2. The failure of the police to give the defendant *Miranda* warnings prior to seeking his consent does not invalidate the consent to a search.

Affirmed.

1. SEARCHES AND SEIZURES — CONSTITUTIONAL LAW.

All evidence obtained in violation of the constitutional protection against unreasonable searches and seizures is inadmissible in court (US Const, Am IV; Const 1963, art 1, § 11).

2. SEARCHES AND SEIZURES — SEARCH WITHOUT WARRANT.

A search and seizure made without a warrant is per se unreasonable unless shown to fall within one of the various exceptions to the warrant requirement; consent is one such exception.

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence § 412.

68 Am Jur 2d, Searches and Seizures § 2 *et seq.*

[2, 3-5, 7] 68 Am Jur 2d, Searches and Seizures § 46 *et seq.*

Validity, under Federal Constitution, of consent to search—Supreme Court cases. 36 L Ed 2d 1143.

[6] 4 Am Jur 2d, Appeal and Error § 166.

3. SEARCHES AND SEIZURES — SEARCH WITHOUT WARRANT — CONSENT TO SEARCH.

The burden is on the prosecution, when it is alleged that a person consented to a search and seizure made without a warrant, to prove by clear and positive evidence that the consent was unequivocal and specific, and freely and intelligently given; the validity of a consent is a question of fact to be decided upon the evidence and all reasonable inferences drawn from it, examining the totality of the circumstances.

4. SEARCHES AND SEIZURES — SEARCH WITHOUT WARRANT — DEFENDANT'S KNOWLEDGE.

A defendant's knowledge of his right to refuse to allow a search is but one factor to be considered in a hearing regarding the suppression of evidence obtained in a search made without a warrant.

5. SEARCHES AND SEIZURES — SEARCH WITHOUT WARRANT — DEFENDANT'S CONDUCT — CONSENT TO SEARCH.

A defendant's conduct, by itself, can, under proper circumstances, be sufficient to constitute consent to a search.

6. APPEAL — EVIDENCE — SUPPRESSION OF EVIDENCE.

A trial court's conclusion following a suppression hearing will not be overturned unless found to be clearly erroneous; that is, if the reviewing court is left with a definite and firm conviction that a mistake has been made.

7. SEARCHES AND SEIZURES — CONSENT TO SEARCH — *MIRANDA* WARNINGS.

The fact that police did not give a defendant *Miranda* warnings prior to obtaining his consent to a search does not necessarily invalidate the consent to the search.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Graham K. Crabtree,* Assistant Prosecuting Attorney, for the people.

*Gates & Gates* (by *John E. Gates, Jr.),* for defendant on appeal.

Before: V. J. Brennan, P.J., and M. J. Kelly and N. J. Kaufman,* JJ.

M. J. Kelly, J. Defendant was convicted by a jury of armed robbery, MCL 750.529; MSA 28.797. Sentenced to serve a term of from 20 to 40 years in prison, defendant appeals as of right.

Defendant's sole argument on appeal is that, following a pretrial evidentiary hearing, the trial court erred in failing to suppress the fruits of a warrantless entry by the police into defendant's home. Defendant challenges only the warrantless entry of his home, arguing that the resulting evidence seized is fruit of the poisonous tree and, therefore, should have been suppressed.

At the evidentiary hearing, Oak Park Police Detective Randall Rance testified that while investigating a robbery and stabbing incident he was informed that the assailant was a 5′9″ black male in his mid-twenties, was dressed in a blue and white flannel shirt, and drove a cream-colored Pontiac Sunbird, license number MCP 257. After obtaining a composite drawing of the suspect and running the license number of the Sunbird through police computers, three plain-clothes officers, Rance, Babbish, and Ankofski, went to the address of the Sunbird's registered owner without a search warrant. Upon arriving, the officers saw the cream-colored Pontiac Sunbird, license number MCP 257, in the driveway. Rance and Babbish approached the house and knocked on the front door. Defendant answered the door but did not open the screen door which separated the house from its porch. Rance noticed that defendant fit the description of the suspect. The officers showed

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

defendant their badges, identified themselves as police officers, and asked defendant his name. After defendant responded with his name, the officers asked defendant if they could come inside and talk to him. Defendant unlatched the screen door and pushed it open toward the officers. The officers then walked into the defendant's living room. Their presence in the house resulted in the seizure of evidence incriminating defendant and in his arrest. Officer Rance testified he could not remember whether defendant asked to see a search warrant.

The testimony of Oak Park Police Detective James Babbish was similar to Rance's testimony. Babbish testified that when defendant appeared at the door he resembled the composite drawing of the suspect. Babbish showed his badge, identified himself and Rance as police officers, and asked if they could come inside and talk to defendant. According to Babbish, defendant then:

"* * * pushed open the screen door and stepped aside inviting us to come in. He didn't say anything, but his actions were to come into the house, what do you want to talk about."

Defendant did not ask the officers whether they had a warrant.

Defendant testified that he heard a knock at his front door. As he approached the door, he saw two officers standing with badges in their hands. The officers asked defendant who owned the car that was in his driveway. Defendant said that it belonged to his wife. One of the officers then asked if he could talk to defendant about it. Defendant unlocked and opened the screen door in an attempt to step outside onto the porch. The officers then began to enter defendant's home without

invitation. Defendant asked the officers if they had a warrant and told them to leave if they did not have one. The officers did not respond to defendant's inquiry.

Following the evidentiary hearing, the trial court stated that it believed "the police officers' testimony over the defendant's that consent was granted". Defendant's motion to suppress was denied.

Individuals are constitutionally protected from being subjected to unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. All evidence obtained in violation of this protection is inadmissible in a state court. *Mapp v Ohio,* 367 US 643, 655; 81 S Ct 1684; 6 L Ed 2d 1081 (1961), accord, *People v Winterheld (On Rehearing),* 366 Mich 428; 115 NW2d 80 (1962), see *People v Pennington,* 383 Mich 611; 178 NW2d 471 (1970) (voiding the Michigan Constitution's anti-exclusionary provision); *People v Moore,* 391 Mich 426, 435; 216 NW2d 770 (1974) (construing *Pennington* as invalidating the Michigan Constitution's anti-exclusionary provision only to the extent that it would have otherwise permitted receipt of evidence barred by the United States Constitution). A warrantless search and seizure is per se unreasonable unless shown to fall within one of the various exceptions to the warrant requirement. *People v Whalen,* 390 Mich 672, 677; 213 NW2d 116 (1973). Consent is one such exception. *People v Kaigler,* 368 Mich 281, 294; 118 NW2d 406 (1962). When consent is alleged, the burden is on the prosecution to prove by clear and positive evidence that the consent was unequivocal and specific, freely and intelligently given. *Kaigler, supra,* p 294. Whether a consent is valid is a question of fact to be decided upon the evidence

and all reasonable inferences drawn from it. *People v Chism,* 390 Mich 104, 123; 211 NW2d 193 (1973). The totality of the circumstances must be examined. *People v Reed,* 393 Mich 342, 363; 224 NW2d 867, *cert den* 422 US 1044; 95 S Ct 2660; 45 L Ed 2d 696, 422 US 1048; 95 S Ct 2665; 45 L Ed 2d 701 (1975). The prosecution need not demonstrate that the defendant had knowledge of the right to refuse to allow the search. *People v Klager,* 107 Mich App 812, 816; 310 NW2d 36 (1981). Rather, such knowledge is but one factor to be considered in a suppression hearing. *Reed, supra,* pp 362-363. Conduct itself can, under proper circumstances, be sufficient to constitute consent. See *People v Whisnant,* 103 Mich App 772, 780-781; 303 NW2d 887, *lv den* 411 Mich 960 (1981).

A trial court's conclusion following a suppression hearing will not be overturned unless that conclusion is found to be clearly erroneous. *People v Rocha,* 110 Mich App 1, 10; 312 NW2d 657 (1981), *lv den* 413 Mich 912 (1982); *People v Hummel,* 19 Mich App 266; 172 NW2d 550 (1969), *lv den* 383 Mich 793 (1970); *People v McGillen #1,* 392 Mich 251, 257; 220 NW2d 677 (1974); see *Chism, supra,* p 123. In some instances, this Court has employed an abuse of discretion standard in reviewing a trial court's ruling on a motion to suppress. *E.g., People v McIntosh,* 110 Mich App 139, 142; 312 NW2d 415 (1981) (KELLY, J.). In light of the foregoing authority, it is clear that the "clearly erroneous" standard represents the proper scope of review. A ruling is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made. *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976); *People v Vandergrift,* 107 Mich App 555; 309 NW2d 665 (1981).

In the instant case, whether defendant consented to the search is primarily a question of credibility. If the prosecution's witnesses are to be believed, a valid consent was given by defendant. Defendant's unlocking and opening of a door to identified police officers and defendant's stepping aside are sufficient actions to warrant the trial court in finding that the prosecution had clearly and positively shown that defendant had unequivocally and specifically, freely and intelligently given his consent to the police to enter his home.

Conversely, if defendant testified truthfully, a valid consent was not given. Defendant's attempt to step out onto his porch, his inquiry whether the officers possessed a warrant, and his statement that they should leave if they did not have a warrant negate the conclusion that defendant unequivocally consented to the police officers' entrance into his home.

Questions of credibility are difficult to resolve at the appellate level. See *People v Thomas,* 387 Mich 368, 372; 197 NW2d 51 (1972). Michigan court rules recognize that it is the trial court that has the special opportunity to judge the credibility of those witnesses who appear before it. See GCR 1963, 517.1, accord, *People v Snell,* 118 Mich App 750, 756; 325 NW2d 563 (1982).

The trial court's discussion of defendant's credibility is a little confusing. The court stated that:

"* * * while on one hand the court can believe that in reason one who has previously been arrested and convicted of a felony might be more astute than other persons with regard to his rights, and there may be some basis for believing that part of his testimony that he asked about a warrant. Nevertheless in that same vein, if he saw police officers and believed them to be police officers it's hard for this court to give credibility

to the fact that he would open the door and proceed to go outside the house and not indicate to them, don't enter, or indicate do you have a warrant before he opened the door or anything else."

Although the court believed that defendant was "aware enough of his rights to have asked them for a warrant", the court stated that it believed the police officers' testimony rather than that ,of the defendant.

Having reviewed the transcript of the evidentiary hearing, we are not left with a definite and firm conviction that a mistake was made by the trial court in finding that defendant consented to the police officers' entry into his home. As noted, whether consent was given is primarily a question of credibility. Having found nothing to convince us that the defendant should have been believed rather than the police, we do not find the trial court's determination to have been clearly erroneous.

Defendant contends further that since the police officers recognized that defendant resembled their composite drawing, they should have given defendant *Miranda*[1] warnings before asking him to consent to their entry. The absence of *Miranda* warnings does not invalidate consent to a search. *Reed, supra,* p 366.

Affirmed.

---

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).