PEOPLE v SMITH

Docket No. 92349. Submitted December 15, 1986, at Lansing. Decided June 18, 1987.

Gregory Smith was charged with and bound over for receiving and concealing stolen property with a value in excess of $100. Subsequently, defendant filed a motion in the Washtenaw Circuit Court seeking to quash the information and suppress the evidence as being the fruit of an alleged unlawful search and seizure of his automobile. The evidence consisted of a stolen engine and transmission. The trial court, Henry T. Conlin, J., denied the motion finding that no warrant was necessary for the police to impound the car and inspect the vehicle identification numbers because defendant had no expectation of privacy in the VINs and that, nonetheless, the actions of the police officers were supported by probable cause. Defendant appealed by leave granted.

The Court of Appeals *held:*

1. The inspection of the VINs on the transmission and the engine did not constitute a search. The inspection of the engine's VIN did not invade a reasonable expectation of privacy belonging to defendant.

2. The investigating officer had probable cause to believe the car might contain a stolen engine and transmission and, thus, he had a valid reason to check the VINs. The stop and seizure of the automobile itself without a warrant was not unreasonable.

Affirmed.

1. APPEAL — EVIDENCE — SUPPRESSION OF EVIDENCE.

A trial court's ruling at a suppression hearing will not be disturbed unless it is clearly erroneous; a finding is clearly errone-

REFERENCES

Am Jur 2d, Appeal and Error §§ 166, 267 *et seq.*; 601 *et seq.*

Am Jur 2d, Searches and Seizures §§ 35 *et seq.*; 60 *et seq.*

Search and seizure: suppression of evidence found in automobile during routine check of vehicle identification number (VIN) 27 ALR4th 549.

Right of accused to be present at suppression hearing or at other hearing or conference between court and attorneys concerning evidentiary questions. 23 ALR4th 955.

ous where the reviewing court is firmly convinced that a mistake has been made.

2. SEARCHES AND SEIZURES — CONSTITUTIONAL LAW.

The test to determine whether a search occurred within the meaning of the United States and Michigan Constitutions thereby necessitating a search warrant or a situation in which an exception to the warrant requirement applies is whether the defendant had a reasonable expectation of privacy in the object or area of the intrusions (US Const, Am IV; Const 1963, art 1, § 11).

3. PRIVACY — VEHICLE IDENTIFICATION NUMBERS — SEARCHES AND SEIZURES.

There is no reasonable expectation of privacy in vehicle identification numbers; the inspection of VINs does not constitute a search requiring a warrant.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *Kirk K. Nissley,* Assistant Prosecuting Attorney, for the people.

*McLain & Winters* (by *Wm. Douglas Winters*), for defendant.

Before: M. J. KELLY, P.J., and SULLIVAN and D. R. CARNOVALE,* JJ.

PER CURIAM. Defendant was charged with and bound over for receiving and concealing stolen property with a value in excess of $100, MCL 750.535; MSA 28.803. Subsequently, defendant filed a motion in the Washtenaw Circuit Court to quash the information and suppress the evidence, in particular, a stolen engine and transmission, as being the fruit of an alleged unlawful search and seizure of his 1974 Monte Carlo. Following the circuit court's denial of the motion, defendant appeals by leave granted.

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

The primary issue is whether the impoundment of defendant's vehicle and inspection of the vehicle identification numbers (VINS) stamped on the engine and transmission without a warrant were violative of defendant's rights against unreasonable searches and seizures under US Const, Am IV, and Const 1963, art 1, § 11. To facilitate review of this issue, recitation of the following relevant facts is necessary.

On Saturday, February 16, 1985, Detective William Gilless of the Washtenaw County Sheriff's Department responded to a domestic disturbance between defendant and his father, Pete Smith, at Smith's residence. Gilless was requested to come to the residence by a uniformed deputy who, while handling the disturbance, overheard a conversation between defendant and his father concerning stolen engine and body parts.

Detective Gilless had known both defendant and Pete Smith for several years, as Smith was an owner of, and defendant an employee of, the Ypsilanti Towing Company, which had a contract with the sheriff's department to provide towing and impoundment services.

Defendant departed from the residence prior to Detective Gilless' arrival. Upon arriving, Gilless spoke with Pete Smith for forty-five minutes. Smith informed Gilless that defendant was using Ypsilanti Towing as a "chop shop" operation, where he would strip down late-model vehicles to sell the parts and, also, purchase and disassemble old-model vehicles and reassemble them with stolen parts. Smith also indicated that defendant possessed a 1974 Monte Carlo, which contained a stolen transmission and engine from a 1982 Corvette, and that other stolen parts were kept at defendant's personal residence.

After the conversation, and in an attempt to find

defendant, Gilless and Pete Smith drove past defendant's residence. Although defendant was not there, the Monte Carlo was parked in the driveway. Smith identified that vehicle as the one containing the stolen engine and transmission. Gilless was already familiar with the vehicle, as he had previously learned from defendant himself that it was completely rebuilt from the frame up and had a selling price of $5,000.

Gilless and Smith then proceeded to Ypsilanti Towing, where they encountered defendant. Gilless informed defendant of his father's allegations, advised him of his *Miranda* rights, *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), and requested permission to inspect company-owned vehicles and the Monte Carlo. Defendant declined to give his consent and advised Gilless to obtain a search warrant.

Gilless immediately arranged to have Officer Michael Rae of the Ypsilanti Police Department keep the Monte Carlo in defendant's driveway under surveillance while Gilless went to obtain the necessary search warrants. Defendant thereafter returned to his residence and encountered Rae, who explained to defendant his presence and purpose. Defendant initially went into his house, but returned outside within ten minutes and began to drive away. After driving half a block, defendant was stopped by Rae, who then requested Gilless to return to the location.

Gilless returned to the scene before having an opportunity to obtain the warrants and requested defendant to allow him to inspect the vehicle identification numbers. Defendant responded that Gilless could only inspect the VIN engraved on the dashboard and then walked away with the keys, leaving the car locked. Gilless did not arrest defen-

dant at that time. Instead, he took steps to impound the vehicle.

The car was then impounded and was ultimately towed that day to the county sheriff's department for overnight storage. Having finally spoken with an assistant prosecutor, Gilless was advised that he would not need a search warrant to inspect the VIN's mounted on the engine and transmission.

The next day, February 17, 1985, the vehicle was towed to Sakstrups Towing, where an inspection was conducted with the technical assistance of Frank Visconi, a special agent for the National Automobile Theft Bureau (NATB), and Deputy Roger Hill of the county sheriff's department. The officers pried open a door of the vehicle with a tool known as a slim jim in order to gain access to the hood latch. Neither the vehicle's interior nor the trunk was inspected.

The VIN on the dashboard was identified as belonging to the Monte Carlo. The engine VIN was inspected from above after the hood was opened. Visconi opined that the original engine VIN had been ground away and restamped with the VIN of a 1979 Chevrolet truck. However, the engine itself had an outward appearance similar to that of a Corvette engine. By comparison, the transmission VIN was unaltered and corresponded with the VIN from the transmission of a stolen 1982 Corvette, as was learned by Visconi through a NATB records check on Monday, February 18.

A more in-depth inspection was conducted on February 28, 1985, during which the engine and transmission were fully removed from the Monte Carlo and a heat restoration process was utilized to remove the existing truck engine VIN and to "raise shadows" of the original VIN stamped underneath. In the opinion of Visconi, the engine

was from the stolen 1982 Corvette. Defendant was thereafter arrested and charged as stated.

In denying defendant's motion, the circuit court judge adopted the reasoning of the examining magistrate who, in issuing an opinion on the admissibility of the VINS, determined that no warrant was necessary to impound the car and inspect the VINS because defendant had no expectation of privacy in the VINS and that, nonetheless, the actions of the officers were supported by probable cause.

A trial court's ruling at a suppression hearing will not be disturbed unless it is clearly erroneous. *People v Burrell,* 417 Mich 439, 448; 339 NW2d 403 (1983). A finding is clearly erroneous where the reviewing court is firmly convinced that a mistake has been made. *People v United States Currency,* 148 Mich App 326, 329; 383 NW2d 633 (1986).

The first issue is whether the inspection of defendant's vehicle to determine the relevant VINS was a search within the meaning of US Const, Am IV, and Const 1963, art 1, § 11, thereby necessitating a warrant or a situation in which an exception to the warrant requirement applies. The test is whether the defendant had a reasonable expectation of privacy in the object or area of the intrusion. *Katz v United States,* 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967); *People v Nash,* 418 Mich 196, 205; 341 NW2d 439 (1983).

In *New York v Class,* — US —; 106 S Ct 960; 89 L Ed 2d 81 (1986), the United States Supreme Court recently held that there was no legitimate expectation of privacy in an automobile VIN which was affixed to the dashboard of the vehicle, subject to the plain view of the public. Noting the role played by VINS in "the pervasive regulation by the government of the automobile," as well as the

lesser expectation of privacy an individual has in a motor vehicle, the Court concluded:

> It is unreasonable to have an expectation of privacy in an object required by law to be located in a place ordinarily in plain view from the exterior of the automobile. The VIN's mandated visibility makes it more similar to the exterior of the car than to the trunk or glove compartment. The exterior of a car, of course, is thrust into the public eye, and thus to examine it does not constitute a "search." See *Cardwell v Lewis* [417 US 583, 588-589; 94 S Ct 2464, 2468-2469; 41 L Ed 2d 325, 333-334 (1974)]. In sum, . . . we hold that there was no reasonable expectation of privacy in the VIN. [106 S Ct at 966.]

Prior to *Class,* Michigan case law also refused to recognize a reasonable expectation of privacy in VINs. In *People v Brooks,* 405 Mich 225; 274 NW2d 430 (1979), our Supreme Court held that no "search" was conducted when a police officer checked a hidden VIN by crawling under the vehicle. Similarly, in *People v Brewer,* 112 Mich App 670; 317 NW2d 218 (1981), a panel of this Court stated that the opening of a motor vehicle door by a police officer to view the VIN on the door post does not constitute a search where the officer has a valid reason to check the VIN.

We thus conclude that the inspection of the VINs on the transmission and the engine did not constitute a search. Based upon the detailed information which Detective Gilless obtained from defendant's father, as well as defendant's refusal to cooperate with the officer, Gilless had probable cause to believe the car might contain a stolen engine and transmission and, thus, he had a valid reason to check the VINs. Although the inspections conducted in the cited authority are arguably distin-

guishable from the instant inspection of the engine, which was not in plain view and required the opening of the locked hood, we nonetheless are not persuaded that the inspection invaded a reasonable expectation of privacy belonging to defendant. See *United States v Polk,* 433 F2d 644, 647-648 (CA 5, 1970).

In light of our finding that Officer Gilless had probable cause to believe defendant's automobile contained stolen parts, we also summarily reject defendant's other argument that the stop and seizure of the automobile itself without a warrant was unreasonable. *Chambers v Maroney,* 399 US 42; 90 S Ct 1975; 26 L Ed 2d 419 (1970).

Affirmed.