PEOPLE v HULSEY

Docket No. 103308. Submitted March 16, 1989, at Grand Rapids.
    Decided April 18, 1989.

Richard K. Hulsey was charged with larceny in a building. The
    Kalamazoo Circuit Court, William G. Schma, J., ordered sup-
    pressed the evidence of dusting powder discovered on defen-
    dant's hands by means of a fluoroscope examination, and
    defendant's statements following the examination and money
    found on defendant, all obtained without a search warrant. The
    people appealed by leave granted.

The Court of Appeals *held:*

A fluoroscope examination of a person's hands to detect the
    presence of "bait" powder does not constitute an illegal search
    within the meaning of the United States or Michigan Constitu-
    tion when conducted without a warrant; there is no reasonable
    expectation of privacy against sense-enhancing devices as such.
    Therefore, the court's suppression order was clearly erroneous.

Reversed.

SEARCHES AND SEIZURES — FLUOROSCOPIC EXAMINATIONS — SENSE-
    ENHANCING DEVICES.

A fluoroscopic examination of a person's hands to detect the
    presence of "bait" powder does not constitute an illegal search
    within the meaning of the United States or Michigan Constitu-
    tion when conducted without a warrant; there is no reasonable
    expectation of privacy against sense-enhancing devices as such
    (US Const, Am IV; Const 1963, art 1, § 11).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *James J. Gregart,* Prosecuting Attorney, and *Michael H. Dzialowski,* Assistant Prosecuting Attorney, for the people.

*James C. Boerigter,* for defendant.

REFERENCES
Am Jur 2d, Searches and Seizures §§ 29, 105.

Before: WEAVER, P.J., and MURPHY and GRIFFIN, JJ.

PER CURIAM. Defendant was charged with one count of larceny in a building, MCL 750.360; MSA 28.592. Following the preliminary examination, the trial court suppressed evidence of dusting powder which was discovered on defendant's hands by means of an ultraviolet scan, and also suppressed defendant's statements following the ultraviolet scan. In addition, the trial court later suppressed evidence of the money found on defendant pursuant to the police investigation. The people appeal by leave granted. We reverse.

I

Testimony adduced at the preliminary examination showed that defendant worked as a janitor/ general helper at a Dunkin Donuts store in the City of Portage. The owner of the business, James Berkey, began noticing money shortages in January of 1987. The money was missing from a reserve cash drawer kept in a locked office in the back of the store. While defendant sometimes waited on customers and had access to the cash there, no shortages ever developed from his activity at the store's cash register. However, defendant came under suspicion following implementation of a different accounting procedure and a change in employee scheduling. After contacting the Portage Police Department, Mr. Berkey obtained from the police an ultraviolet-sensitive dusting powder to apply to the currency. On February 12, 1987, Mr. Berkey and one of his sons counted the money, dusted it, and left at approximately 4:00 P.M. They returned at approximately 7:30 P.M., along with

Mr. Berkey's other son. After reentering the store and discovering a shortage, they called the police.

When the police officer arrived, defendant was in the office with Mr. Berkey's son, Mark. The officer advised defendant that he was investigating the theft of some money from the store. At the officer's request, Mark Berkey produced the ultraviolet light which was already in the office, and the officer asked defendant to show his hands. When the officer ran the light over defendant's hands, those portions of defendant's hands which had touched the powder were illuminated. The officer then advised defendant of his *Miranda* rights and informed him that he was being charged with larceny. Defendant indicated that he understood the rights and that he wished to speak with the officer. He then produced the missing money, the serial numbers of which matched the numbers on the bills previously in the cash box. Defendant was arrested and taken to the police department.

After hearing argument on defendant's motion to quash, to suppress evidence and to suppress the statements following the ultraviolet scan, the trial court denied defendant's motion to quash but granted his motion to suppress evidence and to suppress the statements. The order stated that the money found on defendant was not subject to the order. However, following a later motion to suppress evidence of the money seized, the trial court ordered suppression of the money as well. The people appeal by leave granted.

II

We agree with the people's argument that it was clear error for the trial judge to suppress the evidence and statements. We do not believe that

the fluoroscopic examination of defendant's hands to detect the presence of "bait" powder constituted an illegal search within the meaning of the United States or Michigan Constitution, US Const, Am IV; Const 1963, art 1, § 11.

A defendant who asserts a Fourth Amendment challenge must demonstrate a subjective expectation of privacy that society recognizes as reasonable. *People v Nash,* 418 Mich 196, 205; 341 NW2d 439 (1983); *People v Smith,* 420 Mich 1, 20-21, 27-28; 360 NW2d 841 (1984). The Fourth Amendment provides no protection for what "a person knowingly exposes to the public." *Katz v United States,* 389 US 347, 351; 88 S Ct 507; 19 L Ed 2d 576 (1967). This is true whether or not the thing exposed is examined by artificial means. See *People v Ward,* 107 Mich App 38, 49-50; 308 NW2d 664 (1981), lv den 417 Mich 938 (1983) (observation through telephoto lens); *Dow Chemical Co v United States,* 476 US 227; 106 S Ct 1819; 90 L Ed 2d 226 (1986) (aerial observation and photography of industrial complex).

There is no reasonable expectation of privacy against sense-enhancing devices as such. "Nothing in the Fourth Amendment prohibit[s] the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afford[s] them." *United States v Knotts,* 460 US 276, 282; 103 S Ct 1081; 75 L Ed 2d 55 (1983). A defendant has no reasonable expectation of privacy in physical characteristics such as a fingerprint or a voice print, both of which are constantly exposed to the public. *United States v Dionisio,* 410 US 1, 14-15; 93 S Ct 764; 35 L Ed 2d 67 (1973). An observation by a lawfully positioned police officer using his natural senses of sight, smell, and hearing does not constitute a search; neither does the use of artificial illumina-

tion to enable the officer to see what he would otherwise be unable to detect because of darkness. See *People v Whalen,* 390 Mich 672, 678-679; 213 NW2d 116 (1973).

We disagree with defendant's contention that a flashlight examination substantially differs from a fluoroscopic examination because the flashlight allows a police officer to see at night what he would otherwise be able to see during the day. Both the flashlight and the ultraviolet light are sense-enhancing devices which allow the police officer to see something exposed to public view that he otherwise could not see.

We also disagree with the reasoning of those cases upon which defendant relies, *United States v Kenaan,* 496 F2d 181, 182-183 (CA 1, 1974), and *People v Santistevan,* 715 P2d 792 (Colo, 1986), cert den 479 US 965; 107 S Ct 468; 93 L Ed 2d 412 (1986), which follows *Kenaan.* These cases adopt the minority rule that a fluoroscopic examination constitutes a Fourth Amendment violation because the defendant's body is exposed to scanning with instruments capable of picking up minute objects on the body. The part of defendant's body here at issue—his hands—is not a body part hidden from public scrutiny. On the contrary, defendant's hands are constantly exposed to public scrutiny. It is therefore untenable to maintain that defendant had a reasonable expectation of privacy in his hands. Accordingly, the sense-enhancing ultraviolet scanning did not invade the privacy of defendant's body parts.

We believe the better rule to be that followed by the majority of jurisdictions which have grappled with this question and found a fluoroscopic examination not to constitute a search. See *Commonwealth v DeWitt,* 226 Pa Super 372; 314 A2d 27 (1973); *Montana v Holzapfel,* — Mont —; 748 P2d

953 (1988). See also *United States v Richardson,* 388 F2d 842, 845 (1968); *People v Wesley,* 88 Misc 2d 177; 387 NYS2d 34 (1976); *United States v Millen,* 338 F Supp 747 (ED Wis, 1972); *United States v DeMarsh,* 360 F Supp 132 (ED Wis, 1973). Even though the powder could not be detected with the naked eye, neither may a fingerprint be examined without an application of ink. Moreover, the fluoroscopic examination was controlled and limited to a specific inquiry: whether the defendant's hands had contacted the treated contraband. See *DeWitt, supra* at 30-31.

We are persuaded that the fluoroscopic examination of defendant's hands to detect the presence of "bait" powder did not constitute an illegal search within the meaning of the United States or Michigan Constitution. Therefore, the trial judge's suppression of the evidence and of defendant's statements was clearly erroneous. *People v Grimmett,* 97 Mich App 212, 214; 293 NW2d 768 (1980).

Reversed.