PEOPLE v JORDAN

Docket NO. 117386. Submitted October 18, 1990, at Detroit. Decided March 4, 1991, at 9:10 A.M.

Phalon D. Jordan was convicted of attempted assault with intent to commit armed robbery following a bench trial in the Detroit Recorder's Court, Harvey F. Tennen, J. The defendant appealed, claiming that the trial court erred in admitting evidence of his clothing, seized by the police without a warrant from hospital personnel while he was undergoing medical treatment.

The Court of Appeals *held:*

The trial court erred in failing to suppress evidence of the seized clothing. The seizure did not fall within any recognized exception to the warrant requirement. However, the erroneous admission of evidence was harmless beyond a reasonable doubt.

1. The plain-view exception to the warrant requirement allows the seizure of objects within the plain view of a police officer who has a right to be in the position to have that view. There must be prior justification for the officer's intrusion into an otherwise protected area, the evidence must be obviously incriminatory or contraband, and discovery of the evidence must be totally inadvertent. In this case the clothing was neither obviously incriminating nor contraband, and its observation was not inadvertent.

2. The consent exception to the warrant requirement permits a search and seizure when consent is unequivocal and specific, and freely and intelligently given. Although consent ordinarily must be given by the person affected, a third party may consent where there is an equal right of possession or control. In this case, the hospital was a bailee of the defendant's clothing. While it enjoyed joint access and control of the clothing, it had a duty to safeguard it. The hospital did not enjoy mutual use of the clothing which would allow it to consent to its seizure without a warrant.

3. The exigent-circumstance exception to the warrant re-

REFERENCES

Am Jur 2d, Searches and Seizures §§ 44, 49, 56, 93, 103.

Authority to consent for another to search or seizure. 31 ALR2d 1078.

quirement applies where the police have probable cause to believe that an immediate search will produce specific evidence of a crime and that an immediate search without a warrant is necessary in order to protect the officers or others, prevent the loss or destruction of evidence, or prevent the escape of an accused. In this case, the loss or destruction of the defendant's clothing could not have been a proper concern in light of the defendant's immediate surgery and subsequent, lengthy hospitalization.

4. A two-tiered analysis is used in determining whether an error concerning the admission of evidence is harmless: whether the error was so offensive to the maintenance of a sound judicial system that it can never be regarded as harmless, and whether the error was harmless beyond a reasonable doubt. An error may be intolerably offensive to the maintenance of a sound judicial system if it was deliberately injected into the proceedings by the prosecution, if it deprived the defendant of a fundamental element of the adversarial process, or if it is of a particularly inflammatory or persuasive kind. Error is not harmless where it is reasonably possible that in the absence of the error the defendant would have been acquitted. Under the circumstances of this case, the error was harmless.

Affirmed.

WEAVER, J., concurring with the affirmance of the defendant's conviction, stated that the hospital had joint control of the clothing and could therefore consent to its seizure, and that the seizure was lawful as incident to a lawful arrest.

SEARCHES AND SEIZURES — WITHOUT WARRANTS — HOSPITALIZED SUSPECTS.

A hospital which provides medical treatment to an accused who was injured while committing an alleged offense, and which comes into possession of the accused's clothing in the course of treatment is a bailee which enjoys joint access and control of the clothing but has a duty to safeguard the clothing; the hospital does not enjoy the right of mutual use which would entitle it to consent to the search or seizure of the clothing without a warrant (US Const, Am IV; Const 1963, art 1, § 11).

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Janice M.*

*Joyce Bartee,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Rolf E. Berg*), for the defendant on appeal.

Before: HOLBROOK, JR., P.J., and CYNAR and WEAVER, JJ.

HOLBROOK, JR., P.J. Following a bench trial, defendant was convicted of attempted assault with intent to commit armed robbery, MCL 750.89; MSA 28.284, MCL 750.92; MSA 28.287. He was subsequently sentenced to a term of five years' probation. Defendant appeals as of right. We affirm.

Defendant's conviction stems from an attempt to rob, at gunpoint, Teddy Shaw, who was using an automatic teller machine at a local bank branch. Much to defendant's chagrin, Mr. Shaw was also armed with a handgun and thwarted the attempted robbery by shooting defendant first. Defendant fled the scene in a car driven by an accomplice and was taken to a nearby hospital. Mr. Shaw provided the police with a description of defendant, his clothing, including an unusual T-shirt he was wearing, and other items.

Detroit police officer Gary Regulski was dispatched to the hospital in response to notification by hospital personnel that they were treating an individual for a gunshot wound. When he arrived at the hospital, he found that defendant was undergoing surgery for treatment of his wound. Hospital personnel proceeded to turn over to Officer Regulski, at his request, a bag containing defendant's clothing. Officer Regulski admitted he was told to obtain the clothing by someone in the homicide section and that he did not have a search

warrant. He further admitted that he could not see the clothing until he physically opened the bag and that defendant never gave him permission to take the clothing.

Before trial, defense counsel moved to suppress evidence of the clothing, arguing that it was obtained pursuant to an unlawful search and seizure. Although defense counsel conceded that there was probable cause to seize the clothing, he argued that the seizure was nevertheless illegal because it was not done pursuant to a warrant and that, under the circumstances, there did not exist an exception to the warrant requirement. The prosecutor argued in response that the clothing could be seized under the plain-view exception. The motion to suppress was denied.

After the ruling, counsel stated that he had planned to assert a defense of misidentification, but that this was no longer viable. Counsel further stated that he would cross-examine regarding the issue to avoid a harmless-error analysis on appeal. During direct examination of Mr. Shaw, it was revealed that he had failed to pick defendant out of a photographic lineup, although he recognized defendant at the preliminary examination and identified defendant at trial. Mr. Shaw stated there was no doubt in his mind that defendant was the person who had attempted to rob him.

Defendant testified on his own behalf, stating he was waiving the right to remain silent and was testifying only because the court had precluded his misidentification defense when it denied his motion to suppress. Defendant testified that Mr. Shaw had made racial slurs against him and that he drew his gun only after seeing Mr. Shaw with a gun in his hand. Defendant claimed that it was he, and not Mr. Shaw, who was the victim of a crime.

The trial judge rejected defendant's version of

the incident and convicted defendant of attempted assault with intent to commit armed robbery, but acquitted him of assault with intent to commit armed robbery and possession of a firearm during the commission of a felony.

The issue presented by defendant in this appeal is one of first impression in Michigan: Whether the search and seizure without a warrant of defendant's clothing, in the temporary custody of the hospital while he was undergoing surgery, was permissible under the plain-view exception.

The right against unreasonable searches and seizures is guaranteed by both the state and federal constitutions. US Const, Am IV; Const 1963, art 1, § 11. The state constitutional standard is not higher than the federal standard. *People v Ragland,* 149 Mich App 277, 281; 385 NW2d 772 (1986). The constitutions do not forbid all searches and seizures, only unreasonable ones. *Harris v United States,* 331 US 145, 150; 67 S Ct 1098; 91 L Ed 1399 (1947). Reasonableness depends upon the facts and circumstances of each case. *Cady v Dombrowski,* 413 US 433, 440; 93 S Ct 2523; 37 L Ed 2d 706 (1973). The applicable test in determining the reasonableness of an intrusion is to balance the need to search, in the public interest, for evidence of criminal activity against invasion of the individual's privacy. *Camara v Municipal Court,* 387 US 523; 87 S Ct 1727; 18 L Ed 2d 930 (1967).

Generally, a search conducted without a warrant is unreasonable unless there exists both probable cause and exigent circumstances establishing an exception to the warrant requirement. *People v Malone,* 180 Mich App 347, 355; 447 NW2d 157 (1989); *People v Anthony,* 120 Mich App 207, 210; 327 NW2d 441 (1982), lv den 417 Mich 897 (1983), cert den 462 US 1111 (1983). Probable cause to search exists when facts and circumstances war-

rant a reasonably prudent person to believe that a crime has been committed and that the evidence sought will be found in a stated place. Whether probable cause exists depends on the information known to the officers at the time of the search. *People v Preston Williams,* 160 Mich App 656, 660; 408 NW2d 415 (1987). Among the recognized exceptions to the warrant requirement are exigent circumstance, consent, and plain view. *People v Castle,* 126 Mich App 203, 208; 337 NW2d 48 (1983).

The exigent-circumstance exception is applicable where the police have probable cause to believe that an immediate search will produce specific evidence of a crime and that an immediate search without a warrant is necessary in order to (1) protect the officers or others, (2) prevent the loss or destruction of evidence, or (3) prevent the escape of an accused. *People v United States Currency,* 148 Mich App 326, 330; 383 NW2d 633 (1986).

The consent exception permits searches and seizures when consent is unequivocal and specific, and freely and intelligently given. *Malone, supra.* Although consent to a search must ordinarily be given by the person affected, a third party may consent to the search when the consenting person has an equal right of possession or control of the premises. *People v Bunker,* 22 Mich App 396, 402; 177 NW2d 644 (1970). The validity of a consent depends on the totality of the circumstances, *People v Brown,* 127 Mich App 436, 441; 339 NW2d 38 (1983), and the prosecutor has the burden of proving that the person consenting was authorized to do so and did so freely, *People v Wagner,* 104 Mich App 169, 176; 304 NW2d 517 (1981). A consent can be valid even if the person is not apprised of his right to refuse consent. *Malone, supra,* p 356.

The plain-view exception allows the seizure of objects within the plain view of an officer who has a right to be in the position to have that view. *Harris v United States,* 390 US 234, 236; 88 S Ct 992; 19 L Ed 2d 1067 (1968); *People v Tisi,* 384 Mich 214, 218; 180 NW2d 801 (1970). Three conditions must be satisfied. First, there must be prior justification for the officer's intrusion into an otherwise protected area. *Coolidge v New Hampshire,* 403 US 443, 466; 91 S Ct 2022; 29 L Ed 2d 564 (1971), reh den 404 US 874 (1971); *People v Blackburne,* 150 Mich App 156, 165; 387 NW2d 850 (1986). Second, the evidence must be obviously incriminatory or contraband. *Blackburne, supra.* Third, the discovery must be totally inadvertent. *Coolidge, supra,* p 469.

Generally, if evidence is unconstitutionally seized, it must be excluded from trial. Exclusion of improperly obtained evidence serves as a deterrent to police misconduct and preserves judicial integrity. *Terry v Ohio,* 392 US 1, 12-13; 88 S Ct 1868; 20 L Ed 2d 889 (1968). The exclusionary rule applies not only to evidence improperly seized during a search without a warrant, but to evidence subsequently seized pursuant to a warrant obtained as a result of an initial illegal search. Evidence in the latter category is excludable only if it would not have been obtained but for illegal government activity. *Segura v United States,* 468 US 796, 815; 104 S Ct 3380; 82 L Ed 2d 599 (1984). Evidence is not to be excluded if the connection between the illegal police conduct and the discovery, search, and seizure of the evidence is so attenuated as to dissipate the taint, such as when the government learns of evidence from an independent source, *id.,* p 805, or would have inevitably discovered the evidence regardless of the unconstitutional conduct. *People v Kroll,* 179 Mich

App 423, 429; 446 NW2d 317 (1989). Similarly, the exclusionary rule applies only if the evidence was obtained by official impropriety which was directed at the person moving for suppression. *People v Malone,* 177 Mich App 393, 400; 442 NW2d 658 (1989).

Standing to challenge a search or seizure is not automatic. *People v Smith,* 420 Mich 1, 20; 360 NW2d 841 (1984). Rather, a person needs a special interest in the area searched or the article seized. The test is whether he had a reasonable expectation of privacy in the object or area of the intrusion. *Id.,* p 21. An expectation of privacy is legitimate if the person had an actual, subjective expectation of privacy and that actual expectation is one that society recognizes as reasonable. Whether the expectation exists, both subjectively and objectively, depends on all the circumstances surrounding the intrusion. *People v Perlos,* 436 Mich 305, 317; 462 NW2d 310 (1990). There is no expectation of privacy with regard to what a person knowingly exposes to the public, whether or not the thing exposed is examined by artificial means. *People v Hulsey,* 176 Mich App 566, 569; 440 NW2d 59 (1989). Further, a person can abandon an object and thus deprive himself of standing. *People v Mamon,* 435 Mich 1, 4; 457 NW2d 623 (1990).

When a defendant moves to suppress evidence as having been illegally obtained, it is the prosecutor's burden to show that the search and seizure were justified by a recognized exception to the warrant requirement. *People v Wade,* 157 Mich App 481, 485; 403 NW2d 578 (1987). A trial court's decision following a suppression hearing will not be reversed unless it is clearly erroneous. *People v Burrell,* 417 Mich 439, 448; 339 NW2d 403 (1989). A finding is clearly erroneous when the reviewing court is firmly convinced that a mistake has been

made. *People v Smith,* 162 Mich App 534, 539; 413 NW2d 42 (1987).

On the basis of the facts presented in the case before us, it is clear that the plain-view exception to the warrant requirement is not applicable. The clothing was neither obviously incriminating nor contraband. The clothing was not in the police officer's plain view, and his observation of it was not inadvertent. Therefore, if the seizure is to be constitutional, it must fall within one of the other recognized exceptions to the warrant requirement. We find that it does not fall within any of the recognized exceptions.

While there is no case law in Michigan directly addressing the issue raised in this appeal, there are three cases from other jurisdictions which are particularly instructive. In each, the court concluded that the seizure without a warrant of a hospitalized accused's clothing from hospital personnel was unconstitutional. The common thread of these decisions was the intent of the accused in relinquishing the clothing and the hospital's control over it.

In *People v Watt,* 118 Misc 2d 930; 462 NYS2d 389 (1983), the New York Supreme Court concluded that the defendant had not relinquished an expectation of privacy in the clothing and that the hospital's taking charge of the clothing while the defendant was undergoing surgery did not give rise to a situation whereby the hospital could consent to a search. "Rather, whether express or implied, the hospital became the bailee of the clothes for defendant in a bailment for mutual benefit or for hire." *Id.,* p 932. As bailee, the hospital was required to exercise ordinary and reasonable care of the clothing and lacked the authority to allow the clothing to be taken by the police. The court concluded that the accused "had

every right to rely on these long-established bailment principles, and he cannot be deemed to have assumed the risk that hospital employees would act in dereliction of their duty and surrender this property without even making basic inquiry of the detectives." *Id.*

In *Commonwealth v Silo,* 480 Pa 15; 389 A2d 62 (1978), cert den 439 US 1132 (1979), reh den 440 US 969 (1979), the Supreme Court of Pennsylvania said that "the narrow issue in the . . . case is whether it can be said that the nurse had mutual use and joint access or control over appellant's clothing." *Id.,* p 23. The court concluded that the nurse's access to and control of the clothing was for the limited purpose of safeguarding these effects, not for the purpose of using them, and rejected the prosecutor's argument that a nurse had validly consented to the seizure of the clothing. *Id.*

The Virginia Supreme Court of Appeals, in *Morris v Commonwealth,* 208 Va 331; 157 SE2d 191 (1967), invalidated the seizure without a warrant of a sedated and sleeping defendant's clothing provided by hospital personnel. In arriving at this conclusion, the court found that the defendant had not "authorized the nurse to deliver his clothes to the officer, nor is there any evidence that she had control of the defendant's room or of his clothes and had the right to consent to the taking of these personal effects." *Id.,* p 334. The court analogized that case to a search without a warrant of a hotel room occupied by an accused which had previously been declared unconstitutional. See *United States v Jeffers,* 342 US 48; 72 S Ct 93; 96 L Ed 59 (1951).

In only one case has the contrary result been reached. The Washington Supreme Court, in *State v Smith,* 88 Wash 2d 127; 559 P2d 970 (1977), cert den 434 US 876 (1977), upheld the seizure without

a warrant of a hospitalized defendant's clothing. The majority concluded that hospital personnel had joint control over the defendant's clothing, which had been removed and left in a common room, and could therefore consent to the seizure of the clothing, *id.,* pp 137-142, and also found the seizure to have been lawful under the warrant exceptions for exigent circumstances and search and seizure incident to a lawful arrest. *Id.,* pp 137-143.

We believe the holdings of *Watt, Silo,* and *Morris,* represent the better view of the law. From our review of the record before us, we find no evidence that defendant intended to abandon his clothing and therefore conclude that the hospital possessed the clothing as a bailee. Thus, the hospital personnel enjoyed joint access to and control over the clothing, but their duty was to safeguard the clothing, and they were required to exercise ordinary and reasonable care in performing that duty. The hospital personnel did not enjoy mutual use of the clothing; had they had mutual use, they would have been entitled to consent to the seizure without a warrant. Furthermore, the facts do not suggest that the clothing might have been lost or destroyed before a warrant could have been obtained by the police. The defendant was in surgery when the seizure occurred and remained hospitalized for several weeks thereafter.

We therefore hold that the trial court clearly erred in denying defendant's motion to suppress evidence of the seized clothing. In so holding, we reject the prosecutor's argument that the hospital's statutory duty, pursuant to MCL 750.411; MSA 28.643, to report to the police patients being treated for gunshot wounds includes a duty to turn over all the patient's possessions to the police.

Such a reading of the statute would violate the basic rules of statutory construction.

Having concluded that the evidence should have been suppressed, the question becomes whether its admission was harmless error. We conclude that it was.

A two-tiered analysis is used in determining whether an error concerning the erroneous admission of evidence is harmless. First, it must be determined whether the error is so offensive to the maintenance of a sound judicial system that it can never be regarded as harmless and, second, whether the error was harmless beyond a reasonable doubt so that not even one juror, or, in the event of a bench trial, the judge, would have voted to acquit the defendant but for the error. *People v Robinson,* 386 Mich 551, 563; 194 NW2d 709 (1972). The first criterion is intended to deter prosecutorial and police misconduct, while the second is intended to safeguard the decisional process. *People v Furman,* 158 Mich App 302, 317; 404 NW2d 246 (1987). An error may be intolerably offensive to the maintenance of a sound judicial system if it was deliberately injected into the proceedings by the prosecution, if it deprived the defendant of a fundamental element of the adversarial process, or if it is of a particularly inflammatory or persuasive kind. *Id.,* p 318.

Upon review of the record, we believe that, even if the evidence had been excluded, it is unlikely defendant would have been acquitted in light of the victim's positive and independent identification of defendant, which was based on his physical appearance and not on the clothing he was wearing at the time of the assault. We also believe that defendant's misidentification defense had little chance of success when he was hospitalized for several weeks recuperating from a gunshot wound.

He was positively identified by Mr. Shaw and had the bullet wound to prove it. Moreover, it cannot be said that the error was deliberately injected into the trial by the prosecutor, but rather occurred as a result of the court's pretrial ruling that the evidence was admissible. Considering that there was no Michigan case law on point and that only four other states had addressed the issue, it can hardly be said that the error was knowing or purposeful.

In summary, we find that the seizure without a warrant of defendant's clothing was unconstitutional because it did not fall within any recognized exception to the warrant requirement. The admission of that evidence, however, was harmless beyond a reasonable doubt. We affirm defendant's conviction.

Affirmed.

Cynar, J., concurred.

Weaver, J. *(concurring)*. While I concur in the majority's affirmance of defendant's conviction, I do not agree that the trial court clearly erred in denying defendant's motion to suppress evidence of the seized clothing.

I find persuasive the reasoning of the Washington Supreme Court in *State v Smith,* 88 Wash 2d 127; 559 P2d 970 (1977), cert den 434 US 876 (1977), which upheld the seizure without a warrant of a hospitalized defendant's clothing. In this case, as in *Smith,* the hospital personnel had joint control over the defendant's clothing and could therefore consent to the seizure of the clothing. I would also find seizure to be lawful under the exception for search and seizure incident to a lawful arrest.