*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

ANNE MARIE LAMBERT,

Defendant-Appellee.

UNPUBLISHED
November 21, 2019

No. 344788
Wayne Circuit Court
LC No. 18-002872-01-AR

Before: RONAYNE KRAUSE, P.J., and METER and GLEICHER, JJ.

PER CURIAM.

The prosecution appeals by leave granted[1] the lower courts' dismissal of a charge against defendant for operating a motor vehicle while intoxicated, MCL 257.625. We reverse and remand for reinstatement of the charge.

## I. BACKGROUND

About 1:20 a.m. on November 13, 2017, an individual that identified himself as "Haddie"—a Wayne State Student who lived "at the Bunker's apartment"—called 911 to report his suspicion of a drunk driver near Wayne State University in Detroit. The caller reported that he was following a black Lexus LS 400 with a Kentucky license plate that he had first seen while turning off Woodward onto Palmer. The caller reported that the Lexus had been parked on the side of the street when it "took off real quick," ran a red light, and used the incorrect turnaround before driving the wrong way on a one way street toward the next intersection. According to the caller, "[H]e kind of hit his—his wheel, and the whole car moved. And he was just driving a little reckless at that point." Concerned, the caller followed the suspected drunk driver, who stopped in front of a green light until it turned red. The caller reported that the driver's "head was out on the—looks like he was trying to rest or something."

---

[1] *People v Lampert*, unpublished order of the Court of Appeals, entered December 7, 2018 (Docket No. 344788).

At around 1:40 a.m., a police dispatcher radioed Wayne State Police Officer Mark Newton to inform him that there was a "black Lexus with Kentucky plates riding erratic" in his vicinity. When asked to represent the entirety of his communications with dispatch, Officer Newton testified: "The information that I received from dispatch was the vehicle was driving erratic, and going in and—in and out of traffic" as well as "updates in the [Lexus's] direction of travel." Officer Newton testified that given "all those circumstances that time of night; in my experience as police officer for 14 years; 9 out of 10 times it's someone that's under some type of influence." "Immediately" upon locating the Lexus, and without observing the driver commit a traffic violation, Officer Newton conducted an investigatory stop. Defendant, the Lexus's sole occupant, had an open beer can in plain sight in the center console.

On cross-examination, Officer Newton admitted that dispatch had not conveyed much detail from the 911 call. Officer Newton admitted, after listening to the 911 call for the first time prior to his testimony, that the message he received from dispatch was a vague and partially inaccurate representation of the call: "Erratic driving, swerving in and out of traffic. To the best of my knowledge that's what—that's what I believe I was told; and that's what I put in my report."

At the conclusion of an evidentiary hearing, the district court granted defendant's motion to suppress evidence discovered during the investigatory stop and to dismiss the charges, reasoning that "[t]he arresting officer lack[ed] independent . . . personal, reasonabl[e observations] that the defendant was driving under the influence. The prosecution appealed to the circuit court, which denied the appeal, reasoning that the investigatory stop would have been valid if "[the officer were] given factors by the 911 operator that show[ed] an indicia of reliability," but that a mere advisement of erratic driving was insufficient to create a reasonable suspicion of drunk driving. The circuit court opined, "I don't know why he couldn't have followed this car further to see whether or not they were engaged in that behavior." This appeal followed.

## II. ANALYSIS

The prosecution argues that the dispatcher's message to Officer Newton was sufficient to give Officer Newton a reasonable, articulable suspicion that defendant was engaged in drunk driving and, consequently, to justify the investigatory stop. We review de novo the trial court's ruling at a suppression hearing, but review its factual findings for clear error. *People v Galloway*, 259 Mich App 634, 638; 675 NW2d 883 (2003). "A finding is clearly erroneous if, after reviewing the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *Id.*

"It is well settled that both the United States Constitution and the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Hellstrom*, 264 Mich App 187, 192; 690 NW2d 293 (2004) (internal citation and quotation marks omitted). The reasonableness of a search and seizure depends upon the specific facts and circumstances of the case. *People v Jordan*, 187 Mich App 582, 586; 468 NW2d 294 (1991). Police officers generally must obtain a warrant before conducting a search, *People v Levine*, 461 Mich 172, 178; 600 NW2d 622 (1999), and "a search conducted without a warrant is unreasonable unless there exists . . . exigent circumstances establishing an exception to the

warrant requirement," *Jordan*, 187 Mich App at 586. The burden is on the prosecution to demonstrate that the search was justified by an exception to the warrant requirement. *Galloway*, 259 Mich App at 638.

One such exception to the warrant requirement is for investigatory or "Terry" stops. See *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). The investigatory-stop exception allows an officer to briefly detain an individual without probable cause "for the purpose of determining whether a crime has been committed." *People v Custer*, 465 Mich 319, 327; 630 NW2d 870 (2001). In order to conduct an investigatory stop, the officer must have "reasonable suspicion that crime is afoot." *Id.* (internal citation and quotation marks omitted). Reasonable suspicion is an objective standard. *Terry*, 392 US at 21-22. The officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts," would "warrant a [person] of reasonable caution in the belief" that a crime was afoot. *Id*. (internal citation and quotation marks omitted).

The United States Supreme Court has "firmly rejected the argument that reasonable cause for an investigative stop can only be based on the officer's personal observation, rather than on information supplied by another person." *Navarette v California*, 572 US 393, 397; 134 S Ct 1683; 188 L Ed 2d 680 (2014) (internal citation, quotation marks, and brackets omitted). When a suspicion of wrongdoing arises from a citizen informant's tip rather than an officer's firsthand observations, the tip must be undergirded by "sufficient indicia of reliability" for a court to deem the suspicion reasonable. *Id*. (internal citation and quotation marks omitted). Three factors must be considered when "determining whether the information from the citizen-informant carried enough indicia of reliability: (1) the reliability of the particular informant, (2) the nature of the particular information given to the police, and (3) the reasonability of the suspicion in light of the above factors." *People v Tooks*, 403 Mich 568, 577; 271 NW2d 503 (1978) (internal citation and quotation marks omitted). More recently, this Court has emphasized that, due to the state's strong interest in ensuring safe roadways, "less information is required from citizen informants reporting contemporaneous incidents of erratic or potentially dangerous driving to justify an investigated stop than a strict application of *Tooks* would suggest." *People v Barbarich*, 291 Mich App 468, 479; 807 NW2d 56 (2011).

Defendant argues that this case is controlled by *Florida v JL*, 529 US 266; 120 S Ct 1375; 146 L Ed 2d 254 (2000), in which the United States Supreme Court held that officers lacked reasonable suspicion to conduct an investigatory stop based solely upon an anonymous tipster's description of the defendant's clothing and location, and an allegation that the defendant was carrying a gun. The Court noted that "[a]ll the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L." *Id*. at 271. In other words, the caller, for all police knew, could have looked out his window and decided he did not like the look of *JL*. The Court emphasized that reasonable suspicion "requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Id*. at 272.

We acknowledge *JL*'s precedential value but disagree that *JL* directs that we affirm the suppression. In *Navarette*, 572 US at 395, the United States Supreme Court distinguished *JL* to hold that officers had the reasonable suspicion necessary to justify a traffic stop based on the

following information relayed by a dispatcher: "Showing southbound Highway 1 at mile marker 88, Silver Ford 150 pickup. Plate of 8–David–94925. Ran the reporting party off the roadway and was last seen approximately five [minutes] ago." The *Navarette* Court noted that the *JL* informant "did not explain how he knew about the gun, nor did he suggest that he had any special familiarity with the young man's affairs," whereas the *Navarette* informant, "[b]y reporting that she had been run off the road by a specific vehicle—a silver Ford F–150 pickup, license plate 8D94925— . . . necessarily claimed eyewitness knowledge of the alleged dangerous driving." *Id*. at 398-399. The Court also noted that the caller's report was nearly contemporaneous with the alleged traffic violation and reasoned that substantially contemporaneous reports "[have] long been treated as especially reliable." *Id*. at 399. Finally, the Court reasoned that the *Navarette* informant's use of the 911 system, which employs protocols that can trace the identity of callers, added another layer of reliability. *Id*. at 400-401.

Consistent with the precedent set in *Navarette*, we conclude that the dispatcher's information was sufficient to justify the investigatory stop. Initially, we note that, as in *Navarette*, the informant called in the tip to the 911 system, which adds a layer of reliability to his report. Moreover, consistent with the purpose of the 911 system, the informant reported his contemporaneous observations of suspected drunk driving and Officer Newton was dispatched shortly thereafter. Regarding the quality of the information given to Officer Newton from the dispatcher, we agree with defendant that the dispatcher's indication that defendant was swerving in and out of traffic may have been inaccurate. However, the dispatcher's report that defendant was driving "erratically" is the exact type of description that justifies an investigatory traffic stop. See *Barbarich*, 291 Mich App at 481; *People v Christie (On Remand)*, 206 Mich App 304, 309; 520 NW2d 647 (1994); see also *Navarette*, 572 US at 402 (contrasting "erratic" behaviors such as "weaving back and forth" and "driving in the median" with "driving without a seatbelt or slightly over the speed limit") (internal citation and quotation marks omitted). Defendant argues that *Navarette* is inapposite because the caller in that case reported a serious rather than a minor traffic violation, and the dispatcher in *Navarette* accurately relayed details of the offense to the officers. Contrary to defendant's contention, however, the dispatcher's message in *Navarette* (that defendant "[r]an reporting party off the road") did not contain any more information about the nature of the suspected offense than the dispatcher's message to Officer Newton in this case (that defendant drove "erratic going in and out of traffic"). While more specific information regarding defendant's driving would have been helpful, "erratic" is an accurate characterization of defendant's driving on that night. Indeed, the informant described defendant's driving as "reckless," and indicated that defendant drove the wrong way down one-way streets, ran red lights, "took off real quick" from a stop, and caused the car's wheel to hit something.

Again, "the amount of information necessary to justify an investigative stop based on an anonymous tipster's report of erratic driving is less than that required for other types of criminal activity that pose less immediate danger." *Barbarich*, 291 Mich App at 475 (discussing the holding in *United States v Wheat*, 278 F3d 722, 729-730 (CA 8, 2001)). "[W]hile the quantity of the tip's information must be sufficient to identify the vehicle and to support an inference of a traffic violation, less is required with regard to a tip's reliability; as to the latter, it will suffice if law enforcement corroborates the tip's innocent details." *Id*. at 479-480. Here, Officer Newton located defendant's vehicle based on the tipster's description in the area of the reported reckless driving, thereby corroborating the innocent details of the dispatch. On the basis of his 14 years

of police experience, Officer Newton testified that, at that time of night, a car driving erratically is usually indicative of a driver under the influence of some substance. Given the totality of the circumstances preceding the stop, we conclude that a reasonable person in Officer Newton's position would believe that the driver of the Lexus was committing a substance-related vehicular crime. Officer Newton was not required, as defendant and the lower courts suggest, to personally observe defendant driving erratically before he could conduct the investigatory stop. Such a standard would necessarily contradict our holding in *Barbarich* by potentially needlessly endangering the public when a brief stop could confirm or deny any criminal operation of the vehicle.

Accordingly, we conclude that Officer Newton had reasonable suspicion to conduct an investigatory stop of defendant's vehicle. Therefore, we reverse the lower courts' suppression of the evidence discovered during the stop and remand for reinstatement of the charge against defendant. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Patrick M. Meter
/s/ Elizabeth L. Gleicher