## PEOPLE v CHRISTOPHER RICE

Docket No. 130411. Submitted June 28, 1991, at Lansing. Decided
January 21, 1992, at 9:35 A.M.

Christopher J. Rice was charged in the Recorder's Court for the
City of Detroit with possession with intent to deliver mari-
juana. The court, Dominick R. Carnovale, J., ordered the evi-
dence suppressed and the case dismissed, finding the search of
the defendant's suitcases at Detroit Metropolitan Airport to
have been conducted illegally and unconstitutionally. The peo-
ple appealed.

The Court of Appeals *held:*

1. The defendant abandoned his suitcases and, therefore, did
not have standing to challenge their seizure for exposure to a
dog trained to detect narcotics. There was no coercive police
activity that led to the defendant's abandonment of the suit-
cases.

2. Even if the defendant did not abandon the suitcases and
had standing to challenge the legality of the seizure, the police
had probable cause to detain his suitcases. The court erred in
suppressing the evidence on the basis that there was no proba-
ble cause to detain the suitcases.

3. The Fourth Amendment does not prohibit law enforcement
authorities from temporarily detaining personal luggage for
exposure to a dog trained to detect narcotics where the authori-
ties have a reasonable suspicion that the luggage contains
narcotics. The facts in this case, taken together with rational
inferences, reasonably warranted the detention of the suitcases
for purposes of exposure.

Reversed and remanded.

NEFF, P.J., dissenting, stated that the trial court did not
clearly err in suppressing the evidence. The police did not have

REFERENCES

Am Jur 2d, Searches and Seizures §§ 41, 59, 97, 99, 103, 106.

Use of trained dog to detect drugs or narcotics as unreasonable
search in violation of Fourth Amendment. 31 ALR Fed 931.

Search and seizure: what constitutes abandonment of personal
property within rule that search and seizure of abandoned prop-
erty is not unreasonable—modern cases. 40 ALR4th 381.

a reasonable and articulable suspicion that the luggage contained narcotics sufficient to support a brief detention of the luggage for investigative purposes or to outweigh the defendant's Fourth Amendment interests.

1. SEARCHES AND SEIZURES — EVIDENCE — ABANDONMENT — COERCIVE POLICE ACTIVITY.

A person who abandons an object loses standing to challenge the validity of the seizure of the object by the police; there is no justifiable expectation of privacy in an abandoned object, and any confiscation of the object by the police is not a seizure for constitutional purposes; however, coercive police activity that results in abandonment may nullify a claim of abandonment.

2. SEARCHES AND SEIZURES — LUGGAGE — TEMPORARY DETENTION — NARCOTICS — DETECTION DOGS.

The Fourth Amendment does not prohibit law enforcement authorities from temporarily detaining the personal luggage of a traveler for exposure to a dog trained to detect narcotics where the authorities have reasonable suspicion that the luggage contains narcotics; to justify the detention, the police must be able to articulate specific facts that, taken together with rational inferences to be drawn from them, reasonably warrant the intrusion.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, and *Timothy A. Baughman,* Chief of Research, Training and Appeals, for the people.

*James L. Feinberg,* for the defendant.

Before: NEFF, P.J., and GILLIS and MICHAEL J. KELLY, JJ.

GILLIS, J. Defendant was charged with possession with intent to deliver marijuana, MCL 333.7401(2)(c); MSA 14.15(7401)(2)(c), and, following a preliminary examination, was bound over for trial. Thereafter, defendant moved to suppress the evidence against him. Following a hearing on defendant's motion, the trial court suppressed the evidence and entered an order dismissing this

case. The prosecutor now appeals as of right, claiming defendant had no standing to contest the search of his suitcases. We agree, and reverse.

At defendant's preliminary examination, Mawan Taleb, a member of the Wayne County Sheriff's Department, assigned to the DEA Task Force at Detroit Metropolitan Airport, testified that, on January 6, 1990, he was monitoring incoming passengers on a flight from Phoenix, Arizona, for suspected drug carriers. Taleb observed defendant get off the plane, noticed him turn his head and look behind him several times, and observed the small gym bag defendant was carrying. Defendant then proceeded to the baggage carousel. Taleb continued to observe defendant, who appeared to be looking around. On the basis of defendant's behavior, Taleb identified himself to defendant, showed defendant his badge, and asked to speak with him.

Taleb requested that defendant show him his airline ticket. The ticket bore the name Aross and had two baggage checks on it. Taleb noted the numbers on the baggage checks and returned the ticket to defendant. Taleb asked to see defendant's identification, but defendant claimed that he did not have any identification. However, defendant stated his name, date of birth, and address in Tucson, Arizona.

Taleb asked defendant why he was not flying under his own name, and defendant stated that a friend had purchased the ticket for him. In response to further questioning, defendant stated that he was going to stay with his father in Toledo, Ohio.

Defendant then consented to Taleb's request to search defendant and his gym bag for narcotics. The gym bag bore the name Fredo. When Taleb's

search of defendant and the gym bag uncovered no narcotics, Taleb asked defendant if he could search his checked bags, and defendant said no. Taleb then told defendant that he was going to detain his bags and that he had a reasonable suspicion that defendant was carrying narcotics. At this point, defendant was not under arrest.

At this point, there were only a few bags left on the luggage carousel. Two other police officers, Officer Mary Taylor and Officer Robert Linderman, arrived on the scene. Officer Linderman was accompanied by a narcotics-detection dog. The officers were informed of defendant's baggage claim numbers.

Defendant then asked Taleb if he could make a telephone call, and Taleb responded that he was not under arrest and that he could do whatever he wanted. Defendant made a telephone call, then returned to search for his bags. Defendant told officer Taylor that he had tweed Jordache bags, but there were no bags matching that description on the carousel. The officers then retrieved the luggage matching the claim check numbers attached to defendant's ticket. The claim checks on these bags, like defendant's carry-on gym bag, bore the name Fredo.

At this point, Officer Linderman had the narcotics-detection dog sniff the bags. The officers received a positive response from the dog, and defendant was placed under arrest. Taleb then asked defendant for the claim check stubs to the bags. Defendant gave Taleb the ticket envelope, but the claim checks were not in it. Defendant claimed not to know where they were. Further, defendant denied ownership of the retrieved bags. The officers then opened the suitcases and found twenty-five pounds of marijuana in each suitcase. Taleb never obtained a search warrant to search the

luggage because he felt that defendant had abandoned the bags.

During cross-examination, Taleb stated that he became suspicious of defendant because defendant's plane came from a "source" city, defendant repeatedly looked over his shoulder, and the gym bag defendant was carrying appeared to be lightweight, which indicated to Taleb that defendant would not be staying in the area long. Taleb's suspicions were further aroused when he determined that defendant's name was different than the name on his airline ticket and that defendant's ticket had been paid for in cash.

On appeal, the people argue that defendant had no standing to object to the search of the suitcases because he did not have a reasonable expectation of privacy in the suitcases. Defendant argues that the luggage was not abandoned, and, therefore, he had standing to challenge the legality of the seizure.

A person can abandon an object and thus deprive himself of standing to challenge the validity of the seizure of the object. *People v Mamon,* 435 Mich 1, 6; 457 NW2d 623 (1990). If a person abandons an object, he has no justifiable expectation of privacy in the object, and any police confiscation of the object is not a seizure in the constitutional sense. *People v Boykin,* 119 Mich App 763, 766; 327 NW2d 351 (1982). However, coercive police activity resulting in an abandonment serves to nullify any claim of abandonment. *People v Shabaz,* 424 Mich 42, 66; 378 NW2d 451 (1985).

After reviewing the record in this case, we conclude that defendant abandoned his luggage and, therefore, did not have standing to challenge the seizure of the bags. Defendant advised Officer Taleb that he had tweed Jordache bags. No bags

matching defendant's description of his luggage were found on the baggage carousel. However, bags with numbers matching the numbers on defendant's baggage checks were found on the baggage carousel. However, defendant denied ownership of these bags. Clearly, defendant abandoned the bags that were later found to contain twenty-five pounds of marijuana each. Because we find that defendant abandoned the bags containing marijuana and that there was no coercive police activity that led to, defendant's abandonment of the luggage, we hold that defendant lacked standing to challenge the seizure of his luggage.

Even if defendant did not abandon the luggage containing the marijuana and had standing to challenge the legality of its seizure, we believe that the trial court erred in suppressing the evidence on the basis that the police had no probable cause to detain defendant's luggage.

The right against unreasonable searches and seizures is guaranteed by both the United States and Michigan Constitutions. US Const, Am IV; Const 1963, art 1, § 11. The state and federal constitutions do not forbid all searches and seizures, only unreasonable ones. *Harris v United States,* 331 US 145, 150; 67 S Ct 1098; 91 L Ed 1399 (1947); *People v Jordan,* 187 Mich App 582, 586; 468 NW2d 294 (1991). Reasonableness depends upon the facts and circumstances of each case. *Id.*

In *United States v Place,* 462 US 696; 103 S Ct 2637; 77 L Ed 2d 110 (1983), the United States Supreme Court dealt with the issue whether the Fourth Amendment prohibits law enforcement authorities from temporarily detaining personal luggage for exposure to a trained narcotics-detection dog on the basis of reasonable suspicion that the luggage contains narcotics. The Court concluded

that the Fourth Amendment does not prohibit such a detention. *Id.* at 697-698.

In *Place,* the Court stated:

In this case, the Government asks us to recognize the reasonableness under the Fourth Amendment of warrantless seizures of personal luggage from the custody of the owner on the basis of less than probable cause, for the purpose of pursuing a limited course of investigation, short of opening the luggage, that would quickly confirm or dispel the authorities' suspicion. Specifically, we are asked to apply the principles of *Terry v Ohio* [392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968)] to permit such seizures on the basis of reasonable, articulable suspicion, premised on objective facts, that the luggage contains contraband or evidence of a crime. In our view, such application is appropriate. [*Id.* at 702.]

The *Place* Court held that "when an officer's observations lead him reasonably to believe that a traveler is carrying luggage that contains narcotics, the principles of *Terry* and its progeny would permit the officer to detain the luggage briefly to investigate the circumstances that aroused his suspicion, provided that the investigative detention is properly limited in scope." *Id.* at 706.

To justify such detention, the officer must be able to articulate specific facts that, taken together with rational inferences from those facts, reasonably warrant the intrusion. *Terry, supra* at 21. We disagree with the finding of the trial court that there was nothing to justify the intrusion in this case.

Officer Taleb stated that he became suspicious of defendant because defendant's plane came from a "source" city, defendant repeatedly looked over his shoulder, and the gym bag defendant was carrying

appeared to be lightweight, which indicated to Taleb that defendant would not be staying in the area long. Taleb's suspicions were further aroused when defendant's name was different than the name on his airline ticket and when he determined that defendant's ticket had been paid for in cash.

We conclude that these facts, taken together with rational inferences, reasonably warranted the detention of the suitcases for purposes of exposing them to a narcotics-detection dog under *Place.*

We reverse the trial court's order suppressing the evidence and dismissing this case. We remand this matter to the trial court for further proceedings consistent with this opinion.

MICHAEL J. KELLY, J., concurred.

NEFF, P.J. *(dissenting).* I respectfully dissent and would affirm the decision of the trial court to suppress the evidence.

After the hearing on defendant's motion to suppress the evidence, the trial court stated in pertinent part:

All right. Well, I think the problem is, I think even though it's not technically a *Shabazz* [sic] issue [*People v Shabaz,* 424 Mich 42; 378 NW2d 451 (1985)], I think that everything that took place —he was told that he was going to be—that his property was going to be searched whether he wanted it to be searched or not, so then he denied that those were his two pieces. But there was no question in anybody's mind those were the same kinds of pieces that he—the same ticket numbers that he had.

Did the actions of the police cause this alleged abandonment, and even if not that, were they in fact going to search it? I think it was clear they were going to search it based upon the initial stop

they had, even though their first interrogation with him really took away from their so-called profile when they found that one of the things that they would highly rely on in the school they go to down in Ohio is that he's travelling light with only carry-on luggage, and they find out he's got two more pieces of luggage.

I think that under the cases cited in both counsels' brief, actually, that the subsequent intrusion, the subsequent search has to be all related to the first actions taken by the police in this case. I think that if there was any abandonment, it was done as a result of the police telling them [sic] that they were detaining his luggage, period. And at the time they said they were seizing his luggage, they had no probable cause to do so.

There was nothing in there even to indicate a *Terry*-type intrusion [*Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968)] for a pat-down or for any kind of a thing for their own safety or anything else, or anything to give rise to any reasonable suspicion that any crime had been committed at that stage. There was nothing here other than the suspicions of the police officer which turned out in fact to be true, because there were in fact some drugs.

I don't know what he expected. He found some marijuana. But the fact that the—the subsequent fact does not justify the initial intrusion.

I think that it was all done illegally and unconstitutionally, and I'm going to suppress the evidence.

A trial court's decision to suppress evidence will be reversed by this Court only if that decision is clearly erroneous. *People v Good,* 186 Mich App 180, 185; 463 NW2d 213 (1990). A decision is clearly erroneous when this Court is firmly convinced that a mistake has been made. *Id.* The trial court in this case did not clearly err in suppressing the evidence.

The right against unreasonable searches and seizures is guaranteed by both the United States

and Michigan Constitutions. US Const, Am IV; Const 1963, art 1, § 11. When there is a compelling reason to do so, Const 1963, art 1, § 11 may be construed in a manner that results in greater rights than those given by the federal constitution. *People v Collins,* 438 Mich 8, 28; 475 NW2d 684 (1991). However, the final sentence of this section of the Michigan Constitution precludes a higher standard of reasonableness for searches that uncover narcotics or firearms than the standard imposed by federal law. *People v Nash,* 418 Mich 196, 214; 341 NW2d 439 (1983); *People v Moore,* 391 Mich 426, 435; 216 NW2d 770 (1974). Under the facts here, the Michigan constitutional standard is no higher than the federal standard. Therefore, federal cases are applicable.

The majority correctly cites *United States v Place,* 462 US 696; 103 S Ct 2637; 77 L Ed 2d 110 (1983), for the proposition that a reasonable belief by an officer that a traveler's luggage contains narcotics may support a brief detention of the luggage for investigative purposes. However, I depart from the majority's analysis of the effect of the principle announced in *Place* on the facts of this case and in particular on the determination whether Officer Taleb's suspicion was reasonable.

In my view, none of the facts articulated by Officer Taleb that led him to inform defendant that he would detain his bags individually, and no combination of them collectively, provided the officer with the requisite reasonable and articulable suspicion sufficient to outweigh defendant's Fourth Amendment interests.

At the preliminary examination, Taleb stated that he became suspicious of defendant because defendant had been on a plane coming from a "source" city, he looked over his shoulder, and the bag he was carrying appeared to be lightweight, which would indicate to Taleb that the person

carrying it would not be staying in the area long.[1] Taleb also became more suspicious when defendant's name was different than the name on his airline ticket and when he determined that the ticket had been paid for in cash. These facts are all neutral at best, and at that point defendant had fully cooperated with Taleb to the extent of allowing Taleb to search his person and personal carry-on luggage, which disclosed nothing suspicious. On these facts, I cannot find that Taleb had a "*reasonable,* articulable suspicion, premised on objective facts, that the luggage contains contraband or evidence of a crime." *Place, supra,* p 702. (Emphasis added.) The trial court's decision to suppress the evidence was proper. I would affirm.

---

[1] This latter fact, in particular, defies reason. Most people intending to stay any length of time at their destination would check their luggage and carry as little as possible in their hands. The fact that defendant had only a lightweight carry-on bag and checked luggage would seem to negate Taleb's suspicion that defendant was not planning to stay long.