# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 18, 2018

Plaintiff-Appellee,

v

No. 338965
Kent Circuit Court
LC No. 16-005582-FH

ROSEVELDT JARON BETTS,

Defendant-Appellant.

Before: MURRAY, C.J., and CAMERON and LETICA, JJ.

PER CURIAM.

Defendant appeals his convictions and sentences for felon in possession of a firearm, MCL 750.224f, felon in possession of ammunition, MCL 750.224f(6), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced as a fourth-habitual offender, MCL 769.12, to 3 to 30 years' imprisonment for both felon-in-possession convictions, to be served consecutive to a term of two years' imprisonment for felony-firearm. On appeal, defendant claims the circuit court erred when it denied his pre-trial motion to suppress evidence of the firearm and ammunition. We disagree and therefore affirm.

## I. BACKGROUND

This case arises out of the discovery of a firearm and ammunition found in the house of defendant's girlfriend. On May 5, 2016, the police were called to the girlfriend's house due to an altercation between defendant and his girlfriend. The police dispatch record indicates that the caller, who was the girlfriend's daughter, reported that her mother was being assaulted by defendant and that he was "yelling something about a gun."

At approximately 1:30 a.m., defendant entered the girlfriend's house. Then, around 1:42 a.m., the Grand Rapids Police were dispatched to the house. After the police knocked on the door for "several minutes," a female voice on the other side of the door eventually said "I'm okay" but then refused to open the door. Sergeant Charles Ware, as the officer-in-charge, directed the other officers to kick down the door because he believed that the situation was sufficiently urgent since a child, her mother, and a gun were involved. Defendant was immediately handcuffed and placed in a police car.

Once defendant was removed from the premises, the police entered the house and immediately began searching for other suspects or victims without the girlfriend's consent.

-1-

During this search, Ware spotted a white and black jacket in the basement that appeared to belong to defendant given its size. Ware decided to take the white and black jacket to defendant, but in doing so, Ware noticed a heavy object inside the jacket pocket. The object turned out to be a "speed loader with several bullets in the speed loader." Defendant's Michigan Temporary Personal Identification Card was also found in the jacket. Ware did not immediately seize the ammunition. After finding the speed loader and bullets, Ware communicated his finding to defendant, but he denied that the white and black jacket belonged to him.

While the house was being searched for possible victims and suspects, Officer Patrick Loeb talked to the girlfriend. Loeb testified that, at some point after the ammunition was found, he obtained the girlfriend's consent "to search the home further for the firearm." Loeb also testified that he asked for her consent to search for a gun because, although the girlfriend suggested that there was no firearm in the house, Loeb "didn't really believe that there was no gun involved because a 15-year-old wouldn't be making up hearing something about a gun." Once consent was given, Loeb went downstairs and seized defendant's white and black jacket along with the ammunition and identification card.

Moreover, after Loeb obtained the girlfriend's consent, Officer Michael Reed conducted an additional search for a firearm. He found a firearm upstairs inside an orange jacket hanging in the girlfriend's bedroom closet. The girlfriend testified that she owned the orange jacket, but she denied having any knowledge of the handgun inside its pockets. At trial, the prosecution connected the firearm to defendant by way of DNA evidence.

At the preliminary examination, Ware, Reed, Loeb, and the girlfriend testified. Defendant opposed bindover on his charges claiming the firearm and ammunition should be suppressed because they were unlawfully seized. Two issues were ultimately raised at the preliminary examination: defendant's standing to challenge the search, and the lawfulness of the search and seizure. Upon considering these issues, the district court denied the oral request to suppress the evidence and granted the bindover.

On November 16, 2016, defendant filed a motion to suppress the evidence of the firearm found in the orange jacket and the ammunition found in the white and black jacket with the circuit court. The parties agreed that the motion to suppress would be decided on the record of the preliminary examination. At the suppression hearing, the circuit court held that it "did not find any testimony or evidence presented that [defendant] lived at [the girlfriend's] address." As a result, the circuit court held that defendant did not have standing to challenge the search of the girlfriend's house. The circuit court also held that the firearm and ammunition were lawfully seized.

Defendant now argues he has standing to challenge the search as an overnight guest in the girlfriend's house. Even if defendant does not have standing to challenge the search of the girlfriend's house, he argues that he still has standing to challenge the search of his white and black jacket. Defendant further asserts that the searches and seizures were unlawful.

## II. STANDARD OF REVIEW

Application of the Fourth Amendment of the United States Constitution and article 1, § 11 of the Michigan Constitution is reviewed de novo. *People v Slaughter*, 489 Mich 302, 310; 803 NW2d 171 (2011). Appellate "review of a circuit court's review of a district court's order is also de novo." *Noll v Ritzer*, 317 Mich App 506, 510; 895 NW2d 192 (2016). Findings of fact in deciding a motion to suppress are reviewed for clear error, thereby according deference to the circuit court's resolution of credibility issues caused by conflicting testimony. *People v Burrell*, 417 Mich 439, 448; 339 NW2d 403 (1983). Appellate review requires the examination of "information known to the court at the time it denied defendants' motions to suppress the evidence." *Id*. at 449. A finding of fact is clearly erroneous "if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002).

## III. ANALYSIS

"The Fourth Amendment of the United States Constitution and the parallel provision in the Michigan Constitution guarantee the right of people to be secure in their . . . houses . . . and effects against unreasonable searches and seizures." *People v Armendarez*, 188 Mich App 61, 66; 468 NW2d 893 (1991); see US Const, Am IV, and Const 1963, art 1, § 11. The Michigan Constitution "provide[s] the same protection as that secured by the Fourth Amendment, absent 'compelling reason' to impose a different interpretation." *Slaughter*, 489 Mich at 311, quoting *People v Collins*, 438 Mich 8, 25; 475 NW2d 684 (1991). Evidence seized in violation of the United States and Michigan Constitutions must be excluded from trial. *People v Woodard*, 321 Mich App 377, 383; 909 NW2d 299 (2017).

## A. STANDING

Defendant first argues that he was an overnight guest, and therefore, has standing to challenge the search of the girlfriend's house. We disagree.

A person who brings a constitutional challenge has the burden of proving they have standing to do so. *People v Brown*, 279 Mich App 116, 130; 755 NW2d 664 (2008) (citation omitted). A person meets that burden if, upon a consideration of the totality of the circumstances, they have a "legitimate expectation of privacy in the place or location searched, which expectation society recognizes as reasonable." *Id*., quoting *People v Powell*, 235 Mich App 557, 560; 599 NW2d 499 (1999). While an overnight guest has a legitimate expectation of privacy, a person who is "merely present with the consent of the householder" does not. *Minnesota v Carter*, 525 US 83, 90; 119 S Ct 469; 142 L Ed 2d 373 (1998).

This Court has held that a temporary visitor to a home does not have a reasonable expectation of privacy there. *People v Parker*, 230 Mich App 337, 340-341; 584 NW2d 336 (1998). In *Parker*, the police traced a suspect to an apartment rented by two other people and found him asleep in bed with one of the lessees. *Id*. at 339. Later the same day, the police searched the apartment and seized evidence relating to the suspect's crime. *Id*. The suspect's codefendant testified that he and the suspect only intended to ask one of the lessees to borrow a car and did not plan to stay and sleep there. *Id*. at 340-341. On these facts, this Court concluded that the suspect was a mere visitor and was not an overnight guest. *Id*. at 340.

In this case, similar to *Parker*, defendant cannot prove that he was an overnight guest who has standing to challenge the search of the house. At the suppression hearing, defendant argued that he had standing because he was in the house "well after midnight." However, the preliminary examination record does not indicate when defendant entered the house nor does it show that he had permission to be there. Defendant is not an overnight guest simply because he was in the girlfriend's house after midnight.

Defendant further argues that he has standing as an overnight guest because the witness testified that they "went to bed together." Because the girlfriend was the only witness at the preliminary examination to testify about the events inside her house before police arrived, it was her testimony that could determine whether defendant was an overnight guest. The girlfriend initially testified that defendant was in her house, but suggested he was not in her room. She then changed her testimony and claimed that she and defendant "went to bed together." As the district court found, and the circuit court affirmed, the girlfriend's testimony was contradictory and lacked credibility. As previously noted, this Court cannot disturb the circuit court's finding of fact regarding the girlfriend's lack of credibility unless it is clearly erroneous. *Burrell*, 417 Mich at 448. We do not detect any error in the circuit court's credibility findings. Therefore, defendant cannot prove that he had standing as an overnight guest.

Although the circuit court at the suppression hearing was limited to the evidence presented at the preliminary examination, we also acknowledge that there was evidence presented at the trial confirming defendant was not an overnight guest. Both the girlfriend and her daughter testified that defendant entered the house without permission around 1:30 a.m. Shortly thereafter, the police were dispatched to the girlfriend's house. At most, defendant was a visitor and does not have standing to challenge the search of the girlfriend's house and the seizure of the firearm and ammunition.

Defendant also argues he has standing to challenge the search to his white and black jacket that held the speed loader and bullets. We disagree.

A coat is a personal effect that is protected under the Fourth Amendment of the United States Constitution and Section 11 of Article 1 of Michigan's 1963 Constitution. *Armendarez*, 188 Mich App at 71. "This initial standing inquiry depends upon whether the defendant has a reasonable expectation of privacy in the particular goods at issue." *People v Mamon*, 435 Mich 1, 6; 457 NW2d 623 (1990). The defendant has the burden of establishing that he has standing to bring a constitutional challenge, *Brown*, 279 Mich App at 130 (citation omitted), and the court must make its determination after examining the totality of the circumstances, *People v Mahdi*, 317 Mich App 446, 458-460; 894 NW2d 732 (2016). "A person can deprive himself of standing by abandoning the object of the search or seizure." *People v Zahn*, 234 Mich App 438, 448; 594 NW2d 120 (1999). "Abandonment is an ultimate fact or conclusion based generally upon a combination of act and intent" to relinquish proprietorship. *People v Shabaz*, 424 Mich 42, 65-66; 378 NW2d 451 (1985), quoting *Freidman v United States*, 347 F2d 697, 704 (CA 8, 1965).

In this case, defendant arguably abandoned his white and black jacket when he told officers that the jacket was not his. See *People v Rice*, 192 Mich App 512, 516-517; 482 NW2d 192 (1992) (holding that the defendant abandoned his luggage containing marijuana when he

"denied ownership of the[] bags"). Assuming he did have standing to challenge the search of his jacket, his claim still fails.

## B. SEARCH AND SEIZURE

Warrantless searches and seizures are presumptively unreasonable unless they are shown to fall under one of the exceptions to the warrant requirement. *People v Lemons*, 299 Mich App 541, 545; 830 NW2d 794 (2013). These exceptions include exigent circumstances, emergency aid, and consent. *People v Davis*, 442 Mich 1, 10, 12-20; 497 NW2d 910 (1993). Generally, it is required that illegally seized evidence be excluded from trial. *Brown*, 279 Mich App at 127. However, the inevitable discovery doctrine "permits the admission of evidence obtained in violation of the Fourth Amendment if it can be shown by a preponderance of the evidence that the items found would have ultimately been obtained in a constitutionally accepted manner." *People v Hyde*, 285 Mich App 428; 775 NW2d 833 (2009).

Although defendant admits that the police had a right to enter his girlfriend's house under the exigent circumstances and emergency aid exceptions "to find out what was going on," he argues that the police exceeded the scope of their search on the basis of the incident to arrest exception. However, the prosecutor does not rely on the incident to arrest exception and instead argues: (1) the initial search for victims and suspects conducted without the girlfriend's consent that resulted in the discovery of the ammunition were valid under the exigent circumstances and emergency aid exceptions; (2) the subsequent search and seizure of the firearm and ammunition was valid under the consent exception; and (3) even if the searches conducted prior to the girlfriend's consent were unlawful, evidence of the firearm and ammunition are still admissible under the inevitable discovery rule. Because discovery of the evidence would have been inevitable, we need not reach the prosecution's remaining arguments.

The inevitable discovery rule allows the admission of evidence obtained in violation of the constitution so long as "the prosecution establishe[s] by a preponderance of the evidence that the information . . . inevitably would have been discovered by lawful means." *People v Brzezinski*, 243 Mich App 431, 435; 622 NW2d 528 (2000). Three factors must be considered in applying this rule: (1) whether "the legal means [were] truly independent;" (2) whether "both the use of the legal means and the discovery by that means [were] truly inevitable;" and (3) whether "the application of the inevitable discovery exception either provide an incentive for police misconduct or significantly weaken fourth amendment protection." *Id*. at 436 (citation omitted).

In this case, it was inevitable that the police would have found the ammunition by lawful means. Police were dispatched to the girlfriend's home after her daughter called 911 to report that defendant was in the house and he was threatening her with a gun. Thus, Loeb reasonably believed that there was a firearm in the girlfriend's house, and it was highly likely he would have sought permission to search the house regardless of Ware finding the ammunition. It is inevitable, then, that the officers would have found the ammunition in the white and black jacket. In sum, even if the search and seizure of the ammunition was unlawful because there was no

applicable exception to the warrant requirement, the evidence is admissible under the inevitable discovery rule.[1]

Affirmed.

/s/ Christopher M. Murray
/s/ Thomas C. Cameron
/s/ Anica Letica

---

[1] Defendant argues that the girlfriend's consent was tainted by the prior illegality of Ware's search, and therefore, all evidence from the search based on the girlfriend's consent should be suppressed. This argument fails. Defendant has provided no binding authority for this argument. Relying on secondary authority, defendant contends that it should be impermissible for police to obtain consent after finding incriminating evidence through an illegal search. This argument is unavailing because the inevitable discovery rule applies to the facts of this case.